UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA


SHAWN GRAHAM and          )
MICHELLE GRAHAM           )
                          )
    Plaintiffs,       )
v.                        )          Case No. 1:10-cv-20
                          )          Judge Edgar
                          )
SEQUATCHIE COUNTY GOVERNMENT,  )
ET AL.,                   )
                          )
    Defendants.       )


## MEMORANDUM AND ORDER


    Plaintiffs Shawn and Michelle Graham were stopped in their automobile on a public highway in Sequatchie County, Tennessee, by federal marshals and officers from the Sequatchie County Sheriff's Department and the Van Buren County Sheriff's Department. The officers were searching for fugitive Alvin Johnson ("Johnson") who only a very short time before had eluded arrest and escaped from the officers. The initial stop of the plaintiffs was a valid *Terry* investigative stop. *Terry v. Ohio*, 392 U.S. 1 (1968). Plaintiffs were removed from their automobile, handcuffed, frisked for weapons, and questioned by officers. To make certain that fugitive Johnson was not hiding inside the plaintiffs' automobile, the officers conducted a quick search of the passenger compartment and trunk. The officers did not find any weapons or other evidence of criminal activity. Shawn and Michelle Graham were not formally arrested and charged with committing any criminal offenses. There was no probable cause to arrest them.

    At the conclusion of the *Terry* investigative stop, federal marshals requested or directed

1

Sequatchie County Sheriff Ronnie Hitchcock to detain Shawn and Michelle Graham for further questioning. The investigative stop ripened into a *de facto* arrest under the Fourth Amendment to the United States Constitution. Shawn and Michelle Graham were transported in handcuffs to the Sequatchie County jail where they were detained for approximately four hours. During the process of being admitted into the jail, Shawn and Michelle Graham were required to submit to visual strip searches for weapons, drugs, and other contraband. After the strip searches they were placed in separate prisoner holding cells. Shawn and Michelle Graham were not questioned at the jail, and they were released after fugitive Johnson was captured.

Plaintiffs bring this federal civil rights action pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). They invoke the Court's subject matter jurisdiction over their federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. Pursuant to 28 U.S.C. § 1367 the plaintiffs invoke this Court's supplemental jurisdiction over related Tennessee state law claims.

The following defendants are named in the complaint: Sequatchie County; Ronnie Hitchcock in his individual capacity and official capacity as the Sheriff of Sequatchie County; Brandon Austin, Stacy White, and Willie Brewer in their individual capacities and official capacities as deputy sheriffs employed by the Sequatchie County Sheriff's Department; Van Buren County; Mark Evans, Donnie Evans, and Chad Martin in their individual capacities and official capacities as deputy sheriffs employed by the Van Buren County Sheriff's Department; and United States Deputy Marshals Jason Ladd and Jim Roberson solely in their individual capacities. The Court previously dismissed all of the plaintiffs' claims against defendants Ladd and Roberson without prejudice pursuant to Fed. R. Civ. P. 4(m). [Court Doc. No. 44]. The only remaining defendants are

Sequatchie County, Ronnie Hitchcock, Brandon Austin, Stacy White, Willie Brewer, Van Buren County, Mark Evans, Donnie Evans, and Chad Martin.

Official capacity-suits are merely another way of pleading an action against the governmental entity of which the defendant is an official or employee. By bringing suit against Ronnie Hitchcock, Brandon Austin, Stacy White, and Willie Brewer in their official capacities, the plaintiffs are suing Sequatchie County. By bringing suit against Mark Evans, Donnie Evans, and Chad Martin in their official capacities, the plaintiffs are suing Van Buren County. *Hafer v. Melo*, 502 U.S. 21, 23-25 (1991); *Will v. Michigan Department of State Police*, 491 U.S. 58, 68 (1989); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Gean v. Hattaway*, 330 F.3d 758, 765-66 (6th Cir. 2003).

Defendants Sequatchie County, Ronnie Hitchcock, Brandon Austin, Stacy White, and Willie Brewer move for summary judgment pursuant to Fed. R. Civ. P. 56. [Court Doc. No. 33]. Defendants Van Buren County, Mark Evans, Donnie Evans, and Chad Martin have made a similar motion for summary judgment. [Court Doc. No. 31].

Plaintiffs concede that all claims against Willie Brewer, Mark Evans, and Donnie Evans in their individual and official capacities should be dismissed. [Court Doc. No. 40]. The Court will grant the motions for summary judgment by Willie Brewer, Mark Evans, and Donnie Evans. Pursuant to Fed. R. Civ. P. 56 all of the plaintiffs' claims against Willie Brewer, Mark Evans, and Donnie Evans in their individual and official capacities shall be dismissed with prejudice. As a result, the plaintiffs' claims against Sequatchie County are predicated on the actions of Ronnie Hitchcock, Brandon Austin, and Stacy White. The plaintiffs' claims against Van Buren County are predicated on the actions of Chad Martin.

## I.   Standard of Review: Fed. R. Civ. P. 56

Summary judgment is proper if there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a mater of law.  Fed. R. Civ. P. 56(c); *Van Gorder v. Grand Trunk Western Railroad, Inc*., 509 F.3d 265, 268 (6th Cir. 2007); *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported  motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *accord Lovelace v. BP Products North America, Inc*., 252 Fed. Appx. 33, 39 (6th Cir. 2007); *Talley*, 61 F.3d at 1245.  Material facts are only those facts that might affect the outcome of the action under the governing substantive law. The applicable substantive law will identify and determine which facts are material.  *Anderson*, 477 at 248; *Lovelace*, 252 Fed. Appx. at 39; *Talley*, 61 F.3d at 1245.

Defendants bear the initial burden of demonstrating there are no genuine issues of material fact in dispute.  Defendants may satisfy this initial burden either by presenting affirmative evidence that negates an essential element of a plaintiff's claim, or by demonstrating the absence of evidence to support a claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003); *Talley*, 61 F.3d at 1245.

Once the defendants meet this initial burden, the plaintiffs are not entitled to a trial on the basis of mere allegations.  To defeat a summary judgment motion, the plaintiffs are required to come forward with probative proof to support their claims and show that a trial is necessary to resolve a genuine issue of material fact in dispute.  *Celotex Corp.*, 477 U.S. at 322; *Anderson*, 477 U.S. at 249;

*Van Gorder*, 509 F.3d at 268; *Rodgers*, 344 F.3d at 595. A scintilla of evidence is insufficient to preclude summary judgment. There must be evidence on which a jury could reasonably find in the plaintiffs' favor. *Anderson*, 477 U.S. at 252; *Van Gorder*, 509 F.3d at 268; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000); *Hartsell v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Talley*, 61 F.3d at 1245; *Mitchell v. Toledo Hospital*, 964 F.2d 577, 581-82 (6th Cir. 1992).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. Because the plaintiffs bear the burden of proving their claims at trial, the plaintiffs must present probative facts and admissible evidence showing there is a genuine issue of fact for a jury to decide at trial as to each element of their claims. *Id.*; *Van Gorder*, 509 F.3d at 268; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Hartsell*, 87 F.3d at 799.

The Court's role at the summary judgment stage is to determine whether the record contains sufficient facts and admissible evidence from which a jury could reasonably find in favor of the plaintiffs. *Anderson*, 477 U.S. at 248; *Rodgers*, 344 F.3d at 595; *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001); *Talley*, 61 F.3d at 1245. The Court views the facts in the record and all reasonable inferences that can be drawn from those facts in the light most favorable to the plaintiffs. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Van Gorder*, 509 F.3d at 268; *National Satellite Sports*, 253 F.3d at 907. The Court cannot weigh the evidence, judge credibility of witnesses, or determine the truth of matters reasonably in dispute. *Anderson*, 477 U.S. at 249; *Talley*, 61 F.3d at 1245.

**II.**     <u>**Facts**</u>

**A.**    **Stakeout at Savage Gulf Market and Escape of Fugitive Alvin Johnson**

On the night of January 28 and the early morning hours of January 29, 2009, federal marshals Ladd and Roberson, and officers from Sequatchie County and Van Buren County, gathered for a stakeout at the Savage Gulf Market on Highway 111 in Sequatchie County to apprehend fugitive Alvin Johnson who had outstanding warrants for his arrest in Alabama. The stakeout was part of an investigation into a conspiracy to distribute methamphetamine. The federal marshals were in charge of the stakeout. The cooperating officers from Sequatchie County and Van Buren County Sheriff's Department worked under the direction or supervision of the federal marshals.

Prior to commencing the stakeout, the officers met at the Sequatchie County Justice Center for a briefing led by the federal marshals who advised that: (1) Johnson should be considered armed and dangerous; and (2) Johnson's cell phone records had been monitored and Johnson's last known cell phone call was made to Shawn Graham who had a prior methamphetamine conviction. In his deposition Shawn Graham admits that he knew Johnson. Shawn Graham confirms that he talked with Johnson within a few days prior to the events on January 28-29, 2009.

After the briefing, the federal and state officers proceeded to the Savage Gulf Market. At approximately 12:50 a.m. on January 29, 2009, Johnson's pickup truck entered the parking lot of the Savage Gulf Market and stopped at the fuel pumps. Federal marshals and a Sequatchie County detective were waiting inside the store. Officers approached Johnson's truck both on foot and in motor vehicles to apprehend him. The officers attempted to block Johnson's truck to prevent him from escaping. Sheriff Hitchcock drove his patrol car close to the back bumper of Johnson's truck. Officers from Van Buren County pulled their motor vehicle in front of Johnson's truck.

Two Van Buren County officers, Mark Evans and Donnie Evans, exited their vehicle and

identified themselves as police officers. When the officers began shouting "police," Johnson put his truck into reverse ramming the front bumper of Sheriff Hitchcock's patrol car. Johnson's truck then lurched forward toward officers who were on foot. Because Johnson was attempting to escape and threatening to hit or run over officers with his truck, several officers fired shots at Johnson's truck and one shot wounded Johnson. Johnson raced away from the Savage Gulf Market and was able to escape. Johnson drove south on Highway 111 and turned onto Highway 399 where his truck crashed. Johnson abandoned his wrecked truck and fled on foot into the woods.

### B. *Terry* Investigative Stop: Officers Stop and Search Plaintiffs and Their Automobile

After finding Johnson's wrecked truck along Highway 399, the officers decided to stop all automobiles passing by on the highway to investigate whether Johnson might be hiding in one of them in an effort to elude and escape from the pursuing officers. Federal marshal Roberson led the search for fugitive Johnson. The officers had their weapons drawn, and the weapons were mostly rifles with lights mounted on the barrels. Federal marshal Ladd had a shotgun.

Within a few minutes after the officers found Johnson's wrecked truck, plaintiffs Shawn and Michelle Graham approached the site on Highway 399 in their automobile. Shawn Graham was driving and Michelle Graham was a passenger in the front seat. The plaintiffs' automobile was the first motor vehicle that the officers observed driving on the highway after the officers found Johnson's wrecked truck. This occurred at approximately 1:00 a.m.

When Shawn and Michelle Graham arrived at the search area near the place where Johnson's truck had crashed, 5 - 7 armed officers approached the plaintiffs' automobile to stop it and investigate. The officers did not know whether Johnson might be inside the automobile. As the

officers approached with their weapons drawn, the plaintiffs' automobile suddenly lunged or lurched forward causing more apprehension among the officers.

The plaintiffs' automobile was stopped and surrounded by the group of armed officers which included Chad Martin. This was a *Terry* investigative stop. Ronnie Hitchcock was not present with the group of officers who stopped the plaintiffs. Brandon Austin and Stacy White were working at the Sequatchie County jail, and they did not participate in the investigative stop.

Because it was very dark and in an isolated area, the officers aimed their firearms with mounted lights at the automobile and the persons seated inside. This was done for two reasons: to protect the safety of the officers in case fugitive Johnson happened to be inside the automobile, and to enable the officers to utilize the lights mounted on the barrels of their firearms to illuminate the automobile and improve visibility. The officers shined their lights on the plaintiffs in the automobile by aiming the firearms toward Shawn and Michelle Graham.

Federal marshal Ladd went to the drivers's side window to talk with and remove Shawn Graham from the automobile. Ladd identified himself as a United States Deputy Marshal and displayed his badge. Ladd told Shawn Graham that he could end up in federal custody in Chattanooga if he did not "deal with them straight," i.e. truthfully answer questions. Shawn Graham was placed on the ground and handcuffed. Shawn Graham contends that he was thrown to the ground by federal marshal Ladd. An unidentified officer performed a pat-down search on Shawn Graham to make certain that he was not carrying any weapons.

Chad Martin did not remove Shawn Graham from the automobile and did not search Shawn Graham's person. Chad Martin told Shawn Graham to stop or put his automobile in park and cooperate with the federal marshals. Martin's primary concern was to investigate and determine

whether fugitive Johnson was inside the plaintiffs' automobile.

The officers searched the interior passenger compartment and the trunk of the plaintiffs' automobile but did not find fugitive Johnson. Plaintiffs estimate that they were stopped on the highway for approximately 30 - 45 minutes before being transported to the Sequatchie County jail.

After being handcuffed, Shawn Graham was placed in the backseat of a law enforcement motor vehicle and questioned for about 10-15 minutes. Federal marshals asked Shawn Graham questions about where fugitive Johnson would be in that area and why Shawn Graham was driving there to assist or rescue Johnson. Shawn Graham replied that he did not know anything about Johnson's location and he denied being there to assist Johnson.

Chad Martin questioned the plaintiffs for a few minutes about fugitive Johnson. Chad Martin advised the plaintiffs to cooperate and tell the truth otherwise they might be arrested and taken into federal custody. It is alleged Chad Martin said that if Shawn Graham made false statements to the federal marshals, then Shawn would go to jail. Shawn Graham further alleges that Martin said Shawn should not "screw around" with the federal marshals or they would "blow his brains out" but this is denied by Chad Martin.

Michelle Graham was removed from the automobile, temporarily placed on the ground, and handcuffed. Michelle Graham contends that she was subjected to two searches where the automobile was stopped. Because it was winter and cold weather, she was wearing jean pants and a tight-fitting "hoodie" (hooded sweatshirt) covered by a larger, heavier coat that hung down to her hips. The first search was a pat-down on the outside of her clothing to search for weapons which is allowed during a *Terry* investigative stop. Chad Martin did not search Michelle Graham.

Michelle Graham contends that while she was handcuffed, Sheriff Hitchcock performed a

second more intrusive search during which he reached into all of her pockets. Michelle Graham considered this to be unnecessary and offensive. She alleges that the second search by Sheriff Hitchcock lasted 45-60 seconds.

In his affidavit [Court Doc. No. 34-1, pp. 3-4], Sheriff Hitchcock states that when he arrived at the scene where the plaintiffs' automobile had been stopped, Shawn and Michelle Graham had already been removed from the automobile and handcuffed by the federal marshals. Sheriff Hitchcock did not frisk or search Shawn Graham. Sheriff Hitchcock denies searching Michelle Graham by placing his hands into her pockets.

Michelle Graham contends that Sheriff Hitchcock and Chad Martin questioned her for 5-10 minutes concerning fugitive Johnson. She was asked to explain why she and Shawn Graham were driving on the highway at that time of night.

Shawn and Michelle Graham were not formally arrested and were not charged with the commission of any crimes. There was no probable cause to arrest them. Because fugitive Johnson had not been captured, the federal marshals requested or directed Sheriff Hitchcock to detain Shawn and Michelle Graham for further questioning. Sheriff Hitchcock directed Sequatchie County deputy sheriffs to transport Shawn and Michelle Graham to the Sequatchie County jail and detain them for the federal marshals. Shawn and Michelle Graham were placed under *de facto* arrest.

There is no proof that any Van Buren County officers, including Chad Martin, played any part in the decision to transport Shawn and Michelle Graham from the scene of the investigative stop and detain them in the Sequatchie County jail. Once the *Terry* investigative stop ended, the officers from the Van Buren County Sheriff's Department and Chad Martin were no longer involved, and they did not take any further action concerning the *de facto* arrest, detention, and strip searches of

Shawn and Michelle Graham in the Sequatchie County jail. Van Buren County and Chad Martin are not responsible for Shawn and Michelle Graham being detained as prisoners and strip searched in the Sequatchie County jail.

### C.     Detention in Jail for Further Questioning and Strip Searches

When Shawn and Michelle Graham arrived at the Sequatchie County jail, they were not "booked" and fingerprinted because they were not charged with committing criminal offenses. Shawn and Michelle Graham were detained at the request of the federal marshals for possible further questioning in connection with the ongoing manhunt for fugitive Johnson.

During the admissions process in the jail, Shawn and Michelle Graham were subjected to visual strip searches. Defendant Stacy White, a female deputy, administered Michelle Graham's strip search. Michelle Graham was taken to a private room where she was required to strip off all of her clothes. When she was completely nude, she was required to squat down and cough. Stacy White was the only officer present observing the strip search. Michelle Graham did not suffer any physical and verbal abuse or mistreatment from Stacy White or any other deputies at the jail concerning the strip search.

Shawn Graham experienced the same strip search procedure, except that defendant Brandon Austin administered Shawn's visual strip search. The visual strip searches did not include more intrusive body cavity inspections. See Tenn. Code Ann. § 40-7-121 (body cavity searches).

After the strip searches were completed, Shawn and Michelle Graham got dressed and they were moved from the receiving/admissions area of the jail to separate locked holding cells. It is not clear from the record where the holding cells were located inside the jail in relation to the cells of other prisoners and the general inmate population. As far as the Court can glean from the record,

Shawn and Michelle Graham were segregated in locked holding cells and kept away from other prisoners. Shawn and Michelle Graham were not placed into the jail's general prisoner population. In the absence of any proof to the contrary and viewing the record in the light most favorable to the plaintiffs, the Court infers that while Shawn and Michelle Graham were locked inside the holding cells, they could not mingle and have physical contact with other prisoners. Shawn and Michelle Graham remained in solitary detention in the holding cells while the Sequatchie County officers awaited news on the progress of the manhunt for fugitive Johnson and further instructions from the federal marshals.

The search for fugitive Johnson took several hours. The federal and state officers found Johnson hiding in the woods. After fugitive Johnson was captured, Sheriff Hitchcock asked the federal marshals whether they wanted to further detain and question Shawn and Michelle Graham. The federal marshals indicated that since Johnson had been captured, they no longer needed to detain and question Shawn and Michelle Graham. The federal marshals said that Sheriff Hitchcock could release Shawn and Michelle Graham. Sheriff Hitchcock instructed his deputies at the Sequatchie County jail to release Shawn and Michelle Graham from detention. Sheriff Hitchcock states that he was acting under the direction and supervision of the federal marshals.

From the point in time when their automobile was initially stopped on the highway until they were released from the Sequatchie County jail, Shawn and Michelle Graham were detained for a total of approximately five hours. They were detained for about 30 - 45 minutes during the *Terry* investigative stop. It took about 15 - 20 minutes to transport them to the jail. They Shawn were detained as prisoners in the Sequatchie County jail for four hours which includes the strip searches.

In his affidavit [Court Doc. No. 34-1, pp. 4-5], Sheriff Hitchcock states that at all times

during the search for and apprehension of fugitive Johnson, the actions of Sheriff Hitchcock and the Sequatchie County deputy sheriffs were consistent with the policies and procedures of the Sequatchie County Sheriff's Department. He further states that at all times during the investigative stop and the detention of Shawn and Michelle Graham, the actions of Sheriff Hitchcock and the Sequatchie County deputy sheriffs were consistent with the policies and procedures of the Sequatchie County Sheriff's Department, and consistent with the instructions and directions of the federal marshals.

Sequatchie County and Sheriff Hitchcock have not submitted for this Court's review any written policies, procedures, and law enforcement training manuals that had been adopted or approved by the Sequatchie County Sheriff's Department and were in effect on January 29, 2009. Plaintiffs' counsel, John Wolfe, Jr., submits his affidavit [Court Doc. No. 40-3] stating that he has been unable to find and obtain a written policy and procedure manual from the Sequatchie County Sheriff's Department. Mr Wolfe says that none of the officers from the Sequatchie County Sheriff's Department or their attorneys have ever asserted that a written policy and procedure manual exists.

The record does not reflect whether Sheriff Hitchcock and the Sequatchie County Sheriff's Department had a policy or custom in effect on January 29, 2009 governing: (1) the detention of persons who were not under formal arrest and not charged with criminal offenses; and (2) visual strip searches of persons being newly admitted into the jail as prisoners or detainees. It is not clear whether Sheriff Hitchcock and the Sequatchie County Sheriff's Department had adopted a policy or custom whereby all persons under arrest or held in detention in the jail were automatically or routinely strip searched when being admitted and processed into the jail as prisoners. It is also not clear what factors and criteria, if any, that were taken into consideration and applied by the officers

at the Sequatchie County jail (Stacy White and Brandon Austin) when the decision was made to require Shawn and Michelle Graham to submit to the visual strip searches. The parties have not submitted depositions or affidavits from Brandon Austin and Stacy White. Consequently, the Court is unable to determine from the present record whether the detention and visual strip searches of Shawn and Michelle Graham on January 29, 2009, were consistent with and administered pursuant to policies or customs that had been adopted or approved by Sheriff Hitchcock and the Sequatchie County Sheriff's Department, and the specific details and guidelines of any such policies or customs. These matters and the relevant facts will have to be more fully developed at trial.

In endeavoring to determine whether the Sequatchie County Sheriff's Department had a policy or custom on January 29, 2009, governing visual strip searches of prisoners when prisoners were first received and admitted into the Sequatchie County jail, the Court takes judicial notice that pursuant to Tenn. Code Ann. § 41-4-140 the Tennessee Corrections Institute (TCI) has the power and duty to establish minimum standards for maintaining and operating local jails. The TCI has promulgated rules which provide the minimum standards for local jails in Tennessee, including the Sequatchie County jail. On January 29, 2009, Sheriff Hitchcock and Sequatchie County were required by Tennessee law to observe and comply with the TCI's rules and minimum standards when managing and operating the Sequatchie County jail.

The TCI rules and minimum standards distinguish between the receiving/admissions area of a jail or detention facility where persons are admitted and processed into a jail, and the separate area where prisoners are housed. The term "receiving area" is defined as: "The point of prisoner entry into a jail or detention facility; the period when a prisoner undergoes admission processing, which may include orientation and initial classification prior to regular assignment to the housing

area." TCI Rule 1400-1-.03(51). The term "housing area" is defined as: "A high-security, medium-security, or low-security cell or room, excluding holding, detoxification, infirmary, and segregation cells or rooms." TCI Rule 1400-1-.03(33). A temporary holding cell does not constitute housing. The term "prisoner" is defined as: "One who is confined to a jail." TCI Rule 1400-1-.03(48).

In the section of the TCI Rules on jail security, TCI Rule 1400-1-.07(1) provides: "Each newly admitted prisoner shall be thoroughly searched for weapons and other contraband immediately upon arrival in the facility, regardless of whether the arresting officer has previously conducted a search." TCI Rule 1400-1-.07(1) does not mandate that Tennessee jails conduct visual strip searches for all newly admitted prisoners upon their arrival in the jail. Nor does this rule prohibit visual strip searches in jails for newly admitted prisoners.

TCI Rule 1400-1-.07(2) provides: "A record shall be maintained on a search administered to a newly admitted prisoner." TCI Rule 1400-1-.07(5) provides: "Procedure shall differentiate between the searches allowed (orifice, pat, or strip) and identify when these shall occur and by whom such searches may be made. All orifice searches shall be done under medical supervision. Prisoners shall be searched by jail personnel of the same sex, except in emergency situations."

When TCI Rules 1400-1-.07(1) and 1400-1-.07(5) are read together, the Court construes them to mean that an officer who operates and manages a local jail in Tennessee has the authority and discretion to perform a reasonable visual strip search on a newly admitted prisoner immediately upon that prisoner's arrival in the jail facility, regardless of whether the arresting officer previously searched the prisoner. The purpose of performing a visual strip search on a newly admitted prisoner is to make a thorough search for and confiscate any weapons, drugs, and other contraband that might be in the prisoner's possession. Based on the proof in the court record, it is not clear whether Sheriff

Hitchcock and the Sequatchie County Sheriff's Department had a policy or custom on January 29, 2009, that was designed to comply with and implement these TCI Rules.

## III.    Plaintiffs' Claims and Demands for Relief

The substantive claims and causes of action in the plaintiffs' complaint [Court Doc. No. 1] are organized and set forth in three counts based on the different groups of defendants being sued.

### A.    Count I:  Claims Against Individual Officers

Count I of the complaint avers the following against the individual officers.  It is alleged that the arrest, frisk search, detention, and strip searches of Shawn and Michelle Graham by Sheriff Hitchcock, and by "all the deputies and *de facto* deputies under his command," were unjustified, unprovoked, disproportionate, and unconstitutional in that these defendants failed to exhaust other reasonable means of ascertaining the Grahams' intentions before resorting to assault with deadly weapons, death threats, cursing, frisking, arrest, detention, and strip searches.

Count I further alleges that these officers committed such actions under color of law thereby substantially depriving Shawn and Michelle Graham of their clearly established  rights, privileges, and immunities guaranteed to them by the Fourth, Ninth,  and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983,1985, and 1988  including but not limited to: (1) freedom from unreasonable seizure of person; (2) freedom from the threat of deadly, unreasonable, and unjustified assault; (3) freedom from deprivation of liberty without due process of law; (4) freedom from intrusive, substantial, and unwarranted invasions of privacy; and (5)  freedom from the fear of being seized, detained, and jailed by groups of camouflaged men armed with shotguns and threatening death.

As the Court reads and understands Count I, the plaintiffs do not plead any Tennessee state

law claims against Ronnie Hitchcock, Brandon Austin, Stacy White, and Chad Martin in their individual capacities. For example, Count I does not clearly plead any state law claims against these defendants based on common law assault and battery, false arrest, or false imprisonment. Count I is limited to federal civil rights claims.

The allegation about "all the deputies and *de facto* deputies" under Sheriff Hitchcock's command is a reference to federal marshals Ladd and Roberson and the Van Buren County officers including Chad Martin. This is also a made clear by paragraph 57 in the complaint. It is the plaintiffs' theory that the federal marshals and the Van Buren County officers acted as *de facto* deputy sheriffs of Sequatchie County under the command and supervision of Sheriff Hitchcock. Thus, the plaintiffs seek to impose liability on Sheriff Hitchcock and Sequatchie County for the actions and conduct of the federal marshals and the Van Buren County officers.

Plaintiffs do not present any probative proof to support this theory. The Court rejects the plaintiffs' theory because the facts and proof show that the federal marshals and the Van Buren County officers were not acting as *de facto* deputy sheriffs of Sequatchie County, and they were not under the command and supervision of Sheriff Hitchcock. The federal marshals were at all times acting solely as officers and employees of the United States Marshal's Service. The federal marshals, not Sheriff Hitchcock, were in charge of managing and supervising the search for fugitive Johnson, including the *Terry* investigative stop and *de facto* arrest of Shawn and Michelle Graham. The cooperating officers from the Sequatchie County Sheriff's Department and the Van Buren County Sheriff's Department worked under the direction and supervision of the federal marshals.

B.    **Count II:  Claims Against Sequatchie County**

Count II of the complaint avers the following against Sequatchie County and the Sequatchie

County Sheriff's Department. It is alleged that Sequatchie County, acting through Sheriff Hitchcock, knowingly permitted, encouraged, and tolerated an official pattern, practice, or custom of its police officers violating the constitutional rights of the public at large, including Shawn and Michelle Graham. It is claimed that the violations by Sheriff Hitchcock of the plaintiffs' liberty and privacy interests were unjustified, unreasonable, grossly disproportionate, and violated their rights under 42 U.S.C. §§ 1983, 1985, and 1988, and the Fourth and Fourteenth Amendments to the Constitution.

Count II alleges that Sheriff Hitchcock and Sequatchie County are liable *per se* to plaintiffs Shawn and Michelle Graham for assault under Tenn. Code Ann. § 39-13-101 in that Sheriff Hitchcock and "all deputies on the scene" where the plaintiffs' automobile was stopped put Shawn and Michelle Graham in imminent fear of serious bodily harm. When the plaintiffs broadly contend that Sequatchie County is liable for the actions of "all deputies on the scene," the plaintiffs seek to hold Sequatchie County liable for the actions of the federal marshals and the Van Buren County officers. It is the plaintiffs' theory that the federal marshals and the Van Buren County officers acted as *de facto* deputy sheriffs of Sequatchie County under the command of Sheriff Hitchcock.

As discussed *supra*, the Court rejects this theory because the facts and proof show that the federal marshals and Van Buren County officers did not act as *de facto* deputy sheriffs of Sequatchie County, and they were not under the command and supervision of Sheriff Hitchcock. The federal marshals were at all times acting solely as officers and employees of the United States government. The federal marshals, not Sheriff Hitchcock, were in charge of managing and supervising the search for fugitive Johnson, including the *Terry* investigative stop and *de facto* arrest of Shawn and

Michelle Graham. The officers from Sequatchie County and Van Buren County participated under the direction and supervision of the federal marshals. Moreover, Sheriff Hitchcock was not present at the scene of the *Terry* investigative stop of the plaintiffs' automobile when the alleged assault with deadly weapons occurred. Sheriff Hitchcock arrived at the scene after the plaintiffs had already been stopped, removed from their automobile, and handcuffed by the federal marshals.

Count II further claims that Sheriff Hitchcock and Sequatchie County are liable to plaintiffs Shawn and Michelle Graham under Tenn. Code Ann. § 8-8-302, "as well as under those provisions in the Articles of the Tennessee State Constitution that correspond to the United States Constitution." Plaintiffs do not specify any particular sections or clauses of the Tennessee Constitution.

Tenn. Code Ann. § 8-8-302 provides: "Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is at the time of such occurrence, acting by virtue of or under color of the office." The Court concludes that the plaintiffs cannot establish that Sequatchie County can be held liable pursuant to Tenn. Code Ann. § 8-8-302 for the actions and conduct of federal marshals Ladd and Roberson and the Van Buren County officers including Chad Martin on the theory that they acted as *de facto* deputy sheriffs of Sequatchie County under the purported command of Sheriff Hitchcock.

Next, it is alleged in Count II that Sequatchie County and Sheriff Hitchcock failed to train and educate officers Brandon Austin and Stacy White in the proper manner of detention and search (visual strip searches), thereby evincing deliberate indifference and gross disregard of the plaintiffs' civil rights under the Fourth and Fourteenth Amendments to the United States Constitution.

Finally, Count II claims that to the extent any of these allegations sound in negligence, Sequatchie County is liable under the Tennessee Government Tort Liability Act ("TGTLA"), Tenn. Code Ann. §§ 29-20-101 - 29-20-407, especially with regard to Sheriff Hitchcock's failure to properly train and educate defendants Stacy White and Brandon Austin concerning the "manner of respecting the privacy of those detained, but not charged with a crime." This claim concerns the strip searches in the Sequatchie County jail.

### C.      Count III:  Claims Against Van Buren County

Count III of the complaint avers that Van Buren County and its deputy sheriffs acting in their official capacities are liable under the same statutes, laws, and constitutions as the plaintiffs have pleaded against Sequatchie County.  It is alleged that the Van Buren County deputies aided and abetted Sheriff Hitchcock's constitutional violations committed against Shawn and Michelle Graham, and the Van Buren County deputies "became part of a compact (42 U.S.C. § 1985) that deprived [the Grahams] of their liberty and privacy."  The Court construes this to mean that the plaintiffs are making a conspiracy claim against Van Buren County under 42 U.S.C. § 1985(3).


Count III further claims that Van Buren County failed properly to train and educate its officers in the constitutional manner of arrest and detention, and thereby evinced deliberate indifference to the plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1985.

### D.      Demands for Damages and Other Relief

The complaint contains a section under the heading "DAMAGES."  Plaintiffs aver that as a direct result of the defendants' acts and/or  omissions, Shawn and Michelle Graham were

assaulted, battered, illegally detained, illegally transported, falsely imprisoned, illegally strip searched, and subjected to outrageous conduct. Their rights under the United States Constitution and the Tennessee State Constitution were violated. Plaintiffs seek to recover compensation and damages for: (1) fright, wrongful arrest, and false imprisonment; (2) physical pain and suffering; (3) emotional pain and suffering; (4) gross invasion of privacy; (5) embarrassment and humiliation; (6) punitive damages against the applicable defendants; (7) attorney fees and costs pursuant to 42 U.S.C. § 1988.

Finally, the complaint has a prayer for relief wherein the plaintiffs demand : (1) a declaratory judgment that the policies, practices, and/or customs of the defendants are illegal and unconstitutional; (2) compensatory damages; (3) punitive damages; and (4) attorney fees and costs pursuant to 42 U.S.C. § 1988.

## IV.     42 U.S.C. § 1985(3)

Plaintiffs do not specify a particular subsection of 42 U.S.C. § 1985. As the Court construes the complaint, the plaintiffs make claims under 42 U.S.C. § 1985(3). The § 1985(3) claims must be dismissed with prejudice as to all defendants.

To prevail on a claim under 42 U.S.C. § 1985(3), the plaintiffs are required to prove five elements: (1) a conspiracy between two or more persons; (2) the purpose or object of the conspiracy was to deprive, either directly or indirectly, the plaintiffs of their right to equal protection of the laws, or of the equal privileges and immunities under the laws; (3) an overt act was committed by at least one of the conspirators in furtherance of the conspiracy; (4) the defendants' conduct proximately caused the plaintiffs to suffer personal injury, property damage, or the deprivation of a right or privilege of a citizen of the United States; and (5) the conspiracy was motivated by racial

or other class-based invidious discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971); *Center for Bio-Ethical Reform, Inc. v. City of Springboro,* 477 F.3d 807, 831-32 (6th Cir. 2007); *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 314 (6th Cir. 2005); *Vakilian v. Shaw,* 335 F.3d 509, 518 (6th Cir. 2003); *Johnson v. Hills & Dales General Hospital,* 40 F.3d 837, 839 (6th Cir. 1994); *Hale v. Randolph*, 2004 WL 1854179, * 6 (E.D. Tenn. Jan. 30, 2004); *Kelsay v. Hamilton County*, *Tennessee*, 2003 WL 23721334, * 4 (E.D. Tenn. Dec. 9, 2003).

With regard to the fifth element, the plaintiffs are required to establish that there was some racial or otherwise class-based invidiously discriminatory animus behind the conspirators' actions. *Bray v. Alexandria Clinic*, 506 U.S. 263, 267-68 (1993); *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 829 (1983); *Griffin*, 403 U.S. at 101; *Center for Bio-Ethical Reform,* 477 F.3d at 832; *Vakilian,* 335 F.3d at 519; *Haverstick Enterprises v. Financial Federal Credit,* 32 F.3d 989, 993 (6th Cir. 1994). Plaintiffs must prove there was a conspiracy motivated by an intent to invidiously discriminate against them because they are members of a protected class. *Studen v. Beebe,* 588 F.2d 560, 564 (6th Cir. 1978); *Ohio Inns, Inc. v. Nye,* 542 F.2d 673, 679 (6th Cir. 1976); *Hale*, 2004 WL 1854179, at * 7; *Kelsay,* 2003 WL 23721334, at * 5.

The distinction between classes of persons entitled to protection pursuant to § 1985(3) and those persons who are unprotected is rooted in traditional equal protection analysis under the Equal Protection Clause in the Fourteenth Amendment of the United States Constitution. The classes of persons protected by § 1985(3) are the discrete and insular minorities that receive heightened protection under the Equal Protection Clause because of their inherently personal characteristics. The class-based, invidiously discriminatory animus required by § 1985(3) must be based on race, ethnic origin, sex, religion, or political loyalty. *Vakilian,* 335 F.3d at 519; *Haverstick,* 32 F.3d at

994; *Rice v. Ohio Dept. of Transportation,* 887 F.2d 716, 722 (6th Cir. 1989); *Averitt v. Cloon,* 796 F.2d 195, 198 (6th Cir. 1986); *Browder v. Tipton,* 630 F.2d 1149 (6th Cir. 1980); *Hale*, 2004 WL 1854179, at * 7; *Kelsay*, 2003 WL 23721334, at * 5. 42 U.S.C. § 1985(3) only covers conspiracies against: (1) classes of persons who receive heightened protection under the Fourteenth Amendment's Equal Protection Clause; and (2) those individuals who join together as a class for the purpose of asserting certain fundamental constitutional rights. *Bartell v. Lohiser,* 215 F.3d 550, 559-60 (6th Cir. 2000); *Browder,* 630 F.2d at 1150.

Plaintiffs have not presented any facts and proof to establish that the defendants' actions were motivated by racial or other class-based invidiously discriminatory animus under the Fourteenth Amendment equal protection analysis. Plaintiffs have not demonstrated that they are members of a class of persons who receive heightened protection under the Equal Protection Clause. Plaintiffs do not contend that there was a class-based, invidiously discriminatory animus against them based on their race, ethnic origin, sex, religion, or political loyalty. Plaintiffs do not contend that they joined together with other persons to form a class for the purpose of asserting any fundamental federal constitutional rights. Accordingly, the 42 U.S.C. § 1985(3) claims will be dismissed.

**V.     42 U.S.C. § 1983**

To prevail on a claim under 42 U.S.C. § 1983, plaintiffs must prove that Sequatchie County, Ronnie Hitchcock, Brandon Austin, Stacy White, Van Buren County, and Chad Martin deprived the plaintiffs of a right, privilege, or immunity secured to them by the United States Constitution, federal statute, or other federal law, and the defendants did so while acting under color of Tennessee state law. *Radvansky,* 395 F.3d at 302; *Gregory v. Shelby County, Tenn*., 220 F.3d 433, 441 (6th Cir.

2000). It is undisputed that these defendants were at all times material to this case acting under color of Tennessee state law.

### A.    Officers Sued in Individual Capacities: Doctrine of Qualified Immunity

The defendants sued in their individual capacities (Ronnie Hitchcock, Brandon Austin, Stacy White, and Chad Martin) raise the defense that they are entitled to qualified immunity. The doctrine of qualified immunity protects government officials from civil liability for money damages insofar as their conduct actions does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815 (2009). Qualified immunity applies regardless of whether an official's error is a mistake of fact, a mistake of law, or a mistake based on mixed questions of fact and law. *Id.*

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Dorsey v. Barber*, 517 F.3d 389, 394-95, 400 (6th Cir. 2007); *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007). The concern of the qualified immunity inquiry is to acknowledge that government officials can make reasonable mistakes regarding the legal constraints on their conduct. *Saucier v. Katz*, 533 U.S. 194, 205 (2001); *Dorsey*, 517 F.3d at 394; *Humphrey*, 482 F.3d at 847. Qualified immunity leaves government officials "ample room for mistaken judgments," *Humphrey*, 482 F.3d at 847 (quoting *Scott v. Clay County*, 205 F.3d 867, 873 n. 9 (6th Cir. 2000)), if the mistakes are objectively reasonable.

Qualified immunity is not merely an affirmative defense to liability. It is immunity from

suit, and protects officials from the burdens of litigation and trial. *Pearson*, 129 S.Ct. at 815; *Saucier*, 533 U.S. at 200-01; *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1986); *Tallman v. Elizabethtown Police Department*, 167 Fed. Appx. 459, 462 (6th Cir. 2006).

To assert qualified immunity, a government official must first demonstrate that the official acted within his or her discretionary authority. It is undisputed that Ronnie Hitchcock, Brandon Austin, Stacy White, and Chad Martin were at all times acting within their discretionary authority as government officials.

The burden shifts to plaintiffs Shawn and Michelle Graham to overcome the qualified immunity defense. It is the plaintiffs' burden to prove that the defendants are not entitled to qualified immunity. *Dorsey*, 517 F.3d at 395; *Humphrey*, 482 F.3d at 846. Plaintiffs must prove that a defendant violated a federal constitutional right so clearly established that any reasonable, competent law enforcement officer in the defendant's position would have known or understood that it was unlawful to engage in the conduct that violated the right. *Tallman*, 167 Fed. Appx. at 462; *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).

The Sixth Circuit has developed a three-step analysis to determine whether a government official is entitled to qualified immunity. Generally, the first step is to determine whether the facts, viewed in the light most favorable to the plaintiffs, establish that a defendant violated or deprived the plaintiffs of a right guaranteed to them by the United States Constitution. *Saucier*, 533 U.S. at 201; *see also Holzemer v. City of Memphis*, 621 F.3d 512, 518-19 (6th Cir. 2010); *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009); *Merriweather v. Zamora*, 569 F.3d 307, 315 (6th Cir. 2009); *Tallman*, 167 Fed. Appx. at 462.

Second, the Court considers whether the federal constitutional right was clearly established.

The Court must determine whether the constitutional right was so clearly established on January 29, 2009, that a reasonable official would know or understand that the official's actions and conduct violate that constitutional right. *Jones*, 585 F.3d at 975. This inquiry must be undertaken in consideration of the specific context of this case, not as a broad general proposition of law. *Saucier*, 533 U.S. at 202; *Jones*, 585 F.3d at 975; *Tallman*, 167 Fed. Appx. at 462; *Humphrey*, 482 F.3d at 847. The constitutional right alleged to have been violated cannot be asserted at a high level of generality. It must have been clearly established in a more particularized sense that is relevant to this case. The contours of the right must be sufficiently clear that a law enforcement officer of reasonable competence would know or understand that the officer's actions violate that right. *Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004); *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987); *Dorsey*, 517 F.3d at 402-03; *Gean*, 330 F.3d at 767.

The "reasonable person" is a reasonably competent police officer who should know the law governing his or her official conduct. *Harlow*, 457 U.S. at 818-19; *Gean*, 330 F.3d at 767. A government official will not have qualified immunity if, on an objective basis, it is obvious that no reasonable official would have believed that such actions were lawful or constitutional. But if reasonable officials could disagree on the issue, then qualified immunity should be recognized. *Malley*, 475 U.S. at 341; *Humphrey*, 482 F.3d at 847; *Gean*, 330 F.3d at 767.

It is not mandatory that the Court decide these two steps in this sequence. The Court has the discretion to address these two prongs of the qualified immunity analysis in whatever order best facilitates the fair and efficient disposition of the case. *Pearson*, 129 S.Ct. at 821-22; *Jones*, 585 F.3d 975. The Sixth Circuit adds a third inquiry. If the federal constitutional right violated was clearly established, then the Court must determine whether the plaintiffs have offered sufficient

evidence to indicate that the defendant's actions were objectively unreasonable in light of the clearly established right. *Holzemer*, 621 F.3d at 519; *Jones*, 585 F.3d at 975; *Merriweather*, 569 F.3d at 315; *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc).

The burden of convincing the Court that a federal constitutional right was clearly established law on January 29, 2009, rests squarely on plaintiffs Shawn and Michelle Graham. *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999); *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997). To overcome the defense of qualified immunity, the plaintiffs are required to show that the law existing on January 29, 2009, dictated and truly compelled (not merely suggested or allowed the plaintiffs to raise a question about) the conclusion for every like-situated, reasonable and well-trained law enforcement officer that the defendants' actions and conduct violated clearly established law. *Key*, 179 F.3d at 1000; *Saylor v. Board of Education*, 118 F.3d 507, 515 (6th Cir. 1997). If reasonable officials could disagree on the issue, qualified immunity should be recognized. *Key*, 179 F.3d at 1000; *Summar ex rel. Summar v. Bennett*, 157 F.3d 1054, 1058 (6th Cir. 1998).

To determine whether a federal constitutional right was clearly established law for purposes of qualified immunity, this Court first looks to the decisions and binding legal precedent of the United States Supreme Court. In descending order of importance, this Court next looks to decisions from the Sixth Circuit Court of Appeals, then the District Court for the Eastern District of Tennessee and other district courts within the Sixth Circuit, and finally to decisions from other federal circuits outside the Sixth Circuit. *Merriweather*, 569 F.3d at 315; *Key*, 179 F.3d at 1000; *Chappel v. Montgomery County Fire Protection District No. 1*, 131 F.3d 564, 579 (6th Cir. 1997).

There need not be a relevant decision from the Supreme Court or the Sixth Circuit directly

on point in order to determine that a federal constitutional right was clearly established law. *Key*, 179 F.3d at 1000; *Chappel*, 131 F.3d at 579; *McCloud v. Testa*, 97 F.3d 1536, 1566 (6th Cir. 1996). The decisions of other federal courts of appeals and district courts outside the Sixth Circuit can also be relied on to clearly establish a right or the law, but they must point "unmistakably" to the unconstitutionality of the defendant's conduct and "be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional." *Key*, 179 F.3d at 1000 (quoting *Summar*, 157 F.3d at 1058); *accord Gean*, 330 F.3d at 767; *Cagle v. Gilley*, 957 F.2d 1347, 1348 (6th Cir. 1992).

**B.     No *Respondeat Superior* Liability for Sequatchie County and Van Buren County**

Sequatchie County and Van Buren County cannot be held vicariously liable under 42 U.S.C. § 1983 for any federal constitutional torts committed by their officers and employees based on the doctrine of *respondeat superior*. There is no *respondeat superior* liability under § 1983 for governmental entities. *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 387, 403 (1997); *Collins v. Harker Heights*, 503 U.S. 115, 121 (1992); *Monell v. New York Department of Social Services*, 436 U.S. 658, 694 (1978); *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006); *Doe v. Claiborne County, Tennessee*, 103 F.3d 495, 507 (6th Cir. 1996).

"Instead, it is when the execution of a government's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694; *see also Brown*, 520 U.S. at 403-05; *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *Gregory v. Shelby County, Tennessee*, 220 F.3d 433, 441 (6th Cir. 2000). For Sequatchie County and Van Buren County to have liability under 42 U.S.C. § 1983, the plaintiffs are required to show

28

that Sequatchie County and Van Buren County, through their deliberate conduct, were the moving force behind a violation of the plaintiffs' federal constitutional rights. *Brown*, 520 U.S. at 405; *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Cherrington v. Skeeter*, 344 F.3d 631, 645 (6th Cir. 2003); *Gregory*, 220 F.3d at 442; *Rhodes v. City of Chattanooga*, 2005 WL 2647921, * 5 (E.D. Tenn. Oct. 14, 2005); *Hale*, 2004 WL 1854179, at * 10. In his capacity as head of the Sequatchie County Sheriff's Department, Sheriff Hitchcock is a policymaker for Sequatchie County but he is not a policymaker for Van Buren County.

A governmental custom must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691; 658, *Claiborne County*, 103 F.3d at 507; *Rhodes*, 2005 WL 2647921, at * 5; *Hale*, 2004 WL 1854179, at * 10. It must reflect a course of action deliberately chosen from among various alternatives. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985); *Claiborne County*, 103 F.3d at 508; *Rhodes*, 2005 WL 2647921, at * 5; *Hale*, 2004 WL 1854179, at * 10.

Plaintiffs are also required to show the element of causation, i.e. a direct causal link between a governmental policy or custom and the violation of the plaintiffs' federal constitutional rights. Plaintiffs must show that their constitutional rights were violated as a direct result of the execution of a county policy or custom. *Brown*, 520 U.S. at 405; *City of Canton*, 489 U.S. at 385-86; *Cherrington*, 344 F.3d at 645-46; *Gregory*, 220 F.3d at 442; *Claiborne County*, 103 F.3d at 508; *Gazette v. City of Pontiac*, 41 F.3d 1061, 1066 (6th Cir. 1994); *Rhodes*, 2005 WL 2647921, at * 6; *Hale*, 2004 WL 1854179, at * 10. This is necessary to avoid imposing *de facto respondeat superior* liability on Sequatchie County and Van Buren County which is prohibited by *Monell*, 436 U.S. 658, and its progeny. *Claiborne County*, 103 F.3d at 508; *Rhodes*, 2005 WL 2647921, at * 6; *Hale*, 2004

WL 1854179, at * 10.

### C.      Failure to Train or Supervise Employees

Inadequacy of police training may serve as a basis for imposing liability on a governmental entity under 42 U.S.C. § 1983 but only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *City of Canton*, 489 U.S. at 388; *Plinton v. County of Summit*, 540 F.3d 459, 464 (6th Cir. 2008); *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008); *Gregory*, 444 F.3d at 753; *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005); *Cherrington*, 344 F.3d at 646; *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997). This is in keeping with the *Monell* rule that a governmental entity may only be held liable under 42 U.S.C. § 1983 where its policy caused the constitutional violation that injured the plaintiff.

To prevail on a 42 U.S.C. § 1983 claim of failure to train against Sequatchie County and Van Buren County, the plaintiffs are required to prove three essential elements: (1) the police training program is inadequate to the particular tasks that the officers must perform; (2) the inadequacy in the training program is the result of the county's deliberate indifference; and (3) causation, i.e. the inadequacy of training is closely related to or actually caused a deprivation or violation of the plaintiffs' rights. *City of Canton*, 489 U.S. at 389-91; *Plinton*, 540 F.3d at 464; *Beard v. Whitmore Lake School District*, 244 Fed. Appx. 607, 610-11 (6th Cir. 2007); *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006); *Cherrington*, 344 F.3d at 646; *Carey v. Helton*, 70 Fed. Appx. 291, 294 (6th Cir. 2003); *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989).

Plaintiffs do not offer any proof to show these three elements. The record contains no proof of inadequate police training programs for the Sequatchie County and Van Buren County officers.

Moreover, there is no proof of deliberate indifference and causation.

It is not enough for plaintiffs to merely show that their specific injuries could have been prevented or avoided with better or more police training. *City of Canton*, 489 U.S. at 391; *Mayo v. Macomb County*, 183 F.3d 554, 558 (6th Cir. 1999); *Lewis v. City of Irvine, Kentucky*, 899 F.2d 451, 455 (6th Cir. 1990). "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability" on"for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390-91. In virtually every instance where someone has his constitutional rights violated by a government employee acting under color of state law, a plaintiff in a 42 U.S.C. § 1983 suit will be able to point to something that the governmental entity could have done to help prevent the incident. *Id.* at 392.

What the plaintiffs must show is that a failure to provide adequate police training is the result of deliberate indifference on the part of Sequatchie County and Van Buren County. Deliberate indifference is a stringent standard of fault for which a showing of simple negligence or even heightened negligence will not suffice. Deliberate indifference "does not mean a collection of sloppy, or even reckless oversights." *Claiborne County*, 103 F.3d at 508; accord *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005). Deliberate indifference requires that the plaintiffs prove Sequatchie County and Van Buren County disregarded a known or obvious consequence of their actions. *Brown*, 520 U.S. at 407, 410; *Plinton*, 540 F.3d at 465; *Beard*, 244 Fed. Appx. at 611; *Gregory*, 444 F.3d at 752; *Fisher*, 398 F.3d at 849; *Stemler*, 126 F.3d at 856. The risk of a constitutional violation and injury arising as a result of the inadequacies in police training must be plainly obvious. *Brown*, 520 U.S. at 412; *Gregory*, 444 F.3d at 752-53.

There are two ways to prove that inadequate police training is the result of deliberate

indifference. Under the first way, plaintiffs Shawn and Michelle Graham are required to show that prior to January 29, 2009, there was: (1) a clear and persistent pattern of multiple instances of similar unconstitutional conduct by Sequatchie County and Van Buren County officers; (2) Sequatchie County and Van Buren County either knew or should have known about it; (3) Sequatchie County and Van Buren County were clearly on notice that their police training was deficient and likely to cause injury to members of the public; and (4) Sequatchie County and Van Buren County remained deliberately indifferent and ignored the problem. *Plinton*, 540 F.3d at 464; *Slusher*, 540 F.3d at 457; *St. John v. Hickey*, 411 F.3d 762, 776 (6th Cir. 2005); *Fisher*, 398 F.3d at 849; *Thomas*, 398 F.3d at 433; *Cherrington*, 344 F.3d at 646 (one way to prove deliberate indifference is if governmental entity ignored or failed to take corrective action in response to repeated complaints of constitutional violations by its police officers); *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999).

The Court finds that Shawn and Michelle Graham do not have any proof to establish deliberate indifference under this first standard. There is no proof showing that multiple instances of similar alleged unconstitutional conduct by Sequatchie County and Van Buren County police officers occurred prior to January 29, 2009. There is no proof demonstrating that Sequatchie County and Van Buren County were aware of and ignored a clear, persistent pattern of any similar alleged unconstitutional conduct by their police officers. There is no proof that Sequatchie County and Van Buren County were clearly on notice that their police training was deficient and likely to cause injury.

In the alternative, a single violation of a federal constitutional right, accompanied by a showing that Sequatchie County and Van Buren County thereafter failed to adequately train its

police officers to handle similar recurring situations presenting an obvious potential for such a violation, could trigger liability.  *Brown*, 520 U.S. at 409; *Plinton*, 540 F.3d at 464; *Cherrington*, 344 F.3d at 646 (one way to prove deliberate indifference is the failure to provide adequate police training in light of foreseeable consequences that could result from lack of training, such as failure to instruct officers in use of deadly force); *Brown*, 172 F.3d at 931.  Plaintiffs offer no proof to satisfy this second method of proving deliberate indifference.

In the absence of supporting facts and proof, the Court concludes that Sequatchie County and Van Buren cannot be held liable under 42 U.S.C. § 1983 on a theory of failure to adequately train or supervise their police officers.

### D.     Equal Protection and Due Process Claims Under Fourteenth Amendment

The plaintiffs' claims under the Equal Protection Clause in the Fourteenth Amendment are without merit and  must be dismissed.  The Equal Protection Clause "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly."  *Vacco v. Quill*, 521 U.S. 793, 799 (1997).  The States cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one person differently from other similarly situated persons without a rational basis for the difference.  *Id.*; *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *Radvansky*, 395 F.3d at 312; *Henderson v. Reyda*, 2005 WL 1397030, * 6 (E.D. Tenn. June 13, 2005), *aff'd and remanded*, 192 Fed. Appx. 392 (6th Cir. 2006). Fundamental rights are the basic civil rights of man.  *Skinner v. Oklahoma*, 316 U.S. 535 (1942). These rights include the right to procreate, vote, have access to the judicial process, and interstate travel.  *Henderson*, 192 Fed. Appx. at 397 (citations omitted).

Shawn and Michelle Graham fail to demonstrate how their case fits into any of these

categories. Plaintiffs have not presented any facts and proof to support a viable Equal Protection claim. There is no proof that the defendants discriminated against Shawn and Michelle Graham in violation of the Equal Protection Clause. There is nothing to establish that the defendants burdened a fundamental right of the plaintiffs which they were exercising, or targeted a suspect class of which the plaintiffs are members, or treated the plaintiffs any differently than other persons similarly situated without any rational basis for the difference. Accordingly, the Fourteenth Amendment Equal Protection claims will be dismissed. *Williams v. Leatherwood*, 258 Fed. Appx. 817, 824 (6th Cir. 2007); *Wilson v. Morgan*, 477 F.3d 326, 333 (6th Cir, 2007); *Radvansky*, 395 F.3d at 312-13; *Fowler v. Burns*, 2010 WL 723799, 97030, ** 10-11 (E.D. Tenn. Feb. 25, 2010); *Henderson*, 2005 WL 1397030, at * 6. The plaintiffs' remedy here is to pursue claims for alleged violations of their rights under the Fourth Amendment.

The claims brought under the Fourteenth Amendment's Due Process Clause must also be dismissed. Plaintiffs contend that they were deprived of their federal constitutional rights to liberty and privacy without due process of law. Their reliance on the Due Process Clause is misplaced. Plaintiffs are required to bring these claims under the Fourth Amendment, not the Due Process Clause in the Fourteenth Amendment. *Albright v. Oliver*, 510 U.S. 266 (1994); *Graham v. Connor*, 490 U.S. 386, 388, 395 (1989); *Aldini v. Johnson*, 609 F.3d 858 (6th Cir, 2010).

In *Radvansky*, 395 F.3d 291, a person brought a federal civil rights action under 42 U.S.C. § 1983 claiming that his arrest without probable cause deprived him of his constitutional right to liberty in violation of the Fourteenth Amendment's Due Process Clause. The Sixth Circuit dismissed the due process claim because it is the Fourth Amendment that establishes the procedural protections applicable to searches and seizures. The Due Process Clause in the Fourteenth

Amendment does not require any additional procedures beyond those already mandated by the Fourth Amendment. *Radvansky*, 395 F.3d at 313; *accord Williams*, 258 Fed. Appx. at 824; *Wilson*, 477 F.3d at 333; *Henderson*, 2005 WL 1397030, at * 4.

### E. Fourth Amendment Claims: *Terry* Investigative Stop

The Fourth Amendment provides that the right of the people to be secure in their persons and effects against unreasonable searches and seizures shall not be violated. A person is "seized" by a law enforcement officer when, in view of all the circumstances surrounding the incident, an objectively reasonable person would have believed that he or she was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *Dorsey*, 517 F.3d at 402-03; *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006).

#### 1. Initial Investigative Stop

Shawn and Michelle Graham claim that their Fourth Amendment right against unreasonable seizure was violated when the officers stopped their automobile on the highway and detained them for questioning concerning fugitive Johnson. These Fourth Amendment claims concern Sequatchie County, Sequatchie County Sheriff Hitchcock, Van Buren County, and Chad Martin. Chad Martin was a member of the group of officers who stopped the plaintiffs' automobile. Sheriff Hitchcock was not present when the officers, led by the federal marshals, initially stopped the plaintiffs. Sheriff Hitchcock arrived on the scene after the plaintiffs had already been stopped, removed from the automobile, and handcuffed by the federal marshals.

Brandon Austin and Stacy White were not present and did not participate in the investigative stop. They were at the Sequatchie County jail. The only claims against Brandon Austin and Stacy White arise out of the plaintiffs being detained and strip searched in the jail.

The Court concludes that the initial investigative stop of the plaintiffs was reasonable and did not violate the Fourth Amendment. The federal and state officers stopped the plaintiffs as part of an ongoing manhunt for fugitive Johnson. It was reasonable under the Fourth Amendment for the officers to quickly improvise and set up a checkpoint to stop passing automobiles on the public highway in an effort to find and capture fugitive Johnson.

It is a reasonable and necessary means of law enforcement for officers to establish a checkpoint or roadblock to temporarily stop motor vehicles on a road that they know or reasonably suspect is being used by a dangerous criminal to escape. Such a checkpoint or roadblock is reasonable under the Fourth Amendment, even though it is likely to result in the temporary detention of some individuals who are not suspected of criminal activity. It was reasonable for the officers to temporarily stop the plaintiffs' automobile on the highway near fugitive Johnson's wrecked truck to investigate and search for Johnson. *Edmond v. Goldsmith*, 183 F.3d 659, 662-63 (7th Cir. 1999), *aff'd City of Indianapolis v. Edmond*, 531 U.S. 32, 44 (2000); *United States v. Harper*, 617 F.2d 35, 40-41 (4th Cir. 1980); *United States v. Davis*, 143 F.Supp.2d 1302 (M.D. Ala. 2001), *supplemented by* 151 F.Supp.2d 1343 (M.D. Ala. 2001), *aff'd*, 288 F.3d 1263 (11th Cir. 2001); s*ee also Humphrey*, 482 F.3d 840 (*Terry* investigative stop during police roadblock).

"The Fourth Amendment does not create barriers to reasonable  law enforcement activities in the area of a detected crime. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Harper*, 617 F.2d at 41 (quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972)). The Supreme Court in *Terry*, 392 U.S. 1, recognized that it is often the essence of good police work to utilize an intermediate response and temporarily detain persons for

investigative purposes without making a formal arrest based on probable cause. *Adams*, 407 U.S. at 146; *Harper*, 617 F.2d at 41.

It is permissible under the Fourth Amendment for police officers to briefly stop and detain an individual for investigation if the officers have a reasonable suspicion that criminal activity has occurred or is about to occur. *Terry*, 392 U.S. at 27; *Dorsey*, 517 F.3d at 395; *Humphrey,* 482 F.3d 840; *Williams v. Leatherwoood*, 258 Fed. Appx. 817, 821 (6th Cir. 2007); *United States v. Davis*, 430 F.3d 345, 353-54 (6th Cir. 2005); *United States v. Hurst*, 228 F.3d 751, 756-57 (6th Cir. 2000); *United States v. Palomino*, 100 F.3d 446, 449 (6th Cir. 1996).

The *Terry* "reasonable suspicion" standard requires that law enforcement officers possess specific facts tending to indicate criminal activity before initiating an investigative stop. Reasonable suspicion is more than a mere hunch. It must be based upon a particularized and objective basis for suspecting the particular person of some criminal activity. Reasonable suspicion requires specific, articulable facts which, taken together, reasonably warrant an investigatory stop. The standard required by *Terry* and its progeny is not onerous. The requisite level of reasonable suspicion is considerably less than proof of unlawful conduct by a preponderance of the evidence. Reasonable suspicion can arise from facts and evidence that are less reliable than what is required to establish probable cause to arrest. *Dorsey*, 517 F.3d at 395; *Williams*, 258 Fed. Appx. at 821; *Smoak*, 460 F.3d at 778-79; *Davis*, 430 F.3d at 354; *Hurst*, 228 F.3d at 757; *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 813 (6th Cir. 1999).

An officer's reasonable suspicion need not arise exclusively from his own direct observations. Reasonable suspicion can be derived from additional sources including directions and information supplied by other law enforcement officers. *Dorsey*, 517 F.3d at 395; *Smoak*, 460 F.3d

at 779.  In this case the Sequatchie County and Van Buren County officers, including Chad Martin and Sheriff Hitchcock, acted in reliance upon the information provided to them by the federal marshals, i.e. fugitive Johnson was considered armed and dangerous, and Johnson was a friend and/or associate of Shawn Graham.  Where one officer's claim of qualified immunity rests on his asserted good faith reliance on the reports of other officers, the reliance must be objectively reasonable.  *Dorsey*, 517 F.3d at 395-96; *Humphrey*, 482 F.3d at 848.  This Court finds that when deciding what actions to take regarding the search for fugitive Johnson and the investigative stop of the plaintiffs, it was objectively reasonable for Chad Martin, Sheriff Hitchcock, and all county officers involved to rely in good faith on the information provided to them by the federal marshals.

Based on the totality of the facts and circumstances, this Court finds that the federal and state officers had sufficient information to form a reasonable suspicion that the automobile being driven by Shawn and Michelle Graham might contain fugitive Johnson and should be stopped for investigative purposes.  Once the plaintiffs had been lawfully stopped under *Terry* and the officers discovered that Shawn Graham was the driver, it increased the level of reasonable suspicion.  The officers had reliable information that Shawn Graham was a friend and/or associate of fugitive Johnson, and that Shawn Graham recently had a cell phone conversation with fugitive Johnson.  It was a very suspicious coincidence that Shawn Graham just happened to be driving on the highway at about 1:00 a.m. in the same place where fugitive Johnson had wrecked his truck and fled into the woods.  This was a valid *Terry* investigative stop and did not violate the Fourth Amendment.  Accordingly, to the extent that the plaintiffs bring claims under the 42 U.S.C. § 1983 that the initial investigative stop was unreasonable and violated their Fourth Amendment right against unreasonable seizure, these claims must be dismissed on summary judgment.

Although the initial investigative stop of the plaintiffs in their automobile was reasonable and did not violate the Fourth Amendment, the Court concludes that the plaintiffs may proceed to trial on other Fourth Amendment claims concerning events that occurred during the investigative stop. There are genuine issues of material fact in dispute which preclude summary judgment.

## 2. Excessive Force Claim

Shawn and Michelle Graham make a Fourth Amendment claim that the officers used unreasonable, excessive force when making the investigative stop. Plaintiffs focus on the officers brandishing and aiming firearms at them. Shawn and Michelle Graham were removed from their automobile, placed on the ground, and handcuffed. [1]

A *Terry* investigative stop cannot be excessively intrusive. It must be reasonably related in scope and duration to the purposes of the investigation and the circumstances which justified the stop in the first place. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *Terry*, 392 U.S. at 20; *Dorsey*, 517 F.3d at 398; *Bennett*, 410 F.3d at 836. The scope of the intrusion permitted during an investigative stop varies with the particular facts and circumstances of each case. The investigative methods employed by officers should be the least intrusive means reasonably available to verify or dispel the officer's suspicion of criminal activity in a short period of time. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Dorsey*, 517 F.3d at 398; *Bennett*, 410 F.3d at 836.

The issue whether officers used excessive force in making the *Terry* investigative stop is subject to a Fourth Amendment reasonableness inquiry. *Graham v. Connor*, 490 U.S. 386, 395-96 (1989); *Humphrey,* 482 F.3d at 846. Fourth Amendment jurisprudence recognizes that the right to

---

[1] Shawn Graham complains that he was thrown to the ground by federal marshal Ladd. The complaint against Jason Ladd has been dismissed. None of the remaining defendants are responsible for federal marshal Ladd allegedly throwing Shawn Graham to the ground.

make an arrest or investigative stop necessarily carries with it the right of officers to use a reasonable degree of physical coercion or the threat of force to effect it. *Graham*, 490 U.S. at 396; *Tallman*, 167 Fed. Appx. at 463; *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001); *Arbuckle*, 696 F. Supp.2d at 924. Determining the reasonableness of the force used requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. *Graham*, 490 U.S. at 396; *Humphrey,* 482 F.3d at 846; *Tallman*, 167 Fed. Appx. at 462; *Dickerson v. McClellan*, 101 F.3d 1151, 1162 (6th Cir. 1996).

The reasonableness of a particular use of force must be judged from the perspective of an objectively reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham*, 490 U.S. at 396; *Humphrey,* 482 F.3d at 846; *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002); *Tallman*, 167 Fed. Appx. at 463; *Kostrzewa*, 247 F.3d at 639. The danger and risks faced by law enforcement officers must be taken into consideration. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97; *see also Tallman*, 167 Fed. Appx. at 463; *Kostrzewa*, 247 F.3d at 639; *Arbuckle*, 696 F. Supp.2d at 924.

The Fourth Amendment does not require police officers to use the best technique available as long as their method of making an arrest or investigative stop is reasonable under the circumstances. *Tallman*, 167 Fed. Appx. at 463; *Dickerson*, 101 F.3d at 1160. The Sixth Circuit cautions that we "must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized

world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure." *Smith v. Frelend*, 954 F.2d 343, 347 (6th Cir. 1992); *accord Tallman*, 167 Fed. Appx. at 463; *Dickerson*, 101 F.3d at 1160.

The officers removed Shawn and Michelle Graham from their automobile, placed them down on the ground, handcuffed them, and questioned them inside law enforcement motor vehicles. In some cases it is permissible for officers to take such actions during *Terry* investigative stops but only when it is reasonable and necessary. *Dorsey*, 517 F.3d at 398-99; *Williams*, 258 Fed. Appx. at 822; *Humphrey,* 482 F.3d at 849; *United States v. Atchley*, 474 F.3d 840, 849 (6th Cir. 2007); *Bennett v. City of Easpointe*, 410 F.3d 810, 836-40 (6th Cir. 2005); *Radavansky v. City of Olmsted Falls*, 395 F.3d 291, 309 (6th Cir. 2005); *United States v. Heath*, 259 F.3d 522, 530 (6th Cir. 2001); *Houston*, 174 F.3d at 815; *see also Arbuckle v. City of Chattanooga*, 696 F. Supp.2d 907, 924 (E.D. Tenn. 2010). Whether this was reasonable and necessary in the instant case is an issue for the jury at trial.

Shawn and Michelle Graham also contend that the officers used excessive force in that the plaintiffs were assaulted with deadly weapons in the middle of the night on a dark highway by a group of strange men armed with rifles and shotguns threatening them with death. Officers may draw and use their weapons during a *Terry* investigative stop so long as it is reasonable and circumstances warrant that precaution. *Heath,* 259 F.3d at 530; *Humphrey,* 482 F.3d at 849; *Radavansky*, 395 F.3d at 309; *Houston*, 174 F.3d at 815; *Arbuckle*, 696 F. Supp.2d at 924-25. The issue whether it was reasonable under the Fourth Amendment for the officers to use their firearms to make the investigative stop of Shawn and Michelle Graham is for the jury to decide at trial. There are genuine issues of material fact in dispute.

Plaintiffs may proceed to trial on their Fourth Amendment excessive force claim against Chad Martin in his individual capacity. Chad Martin is not entitled to qualified immunity on the excessive force claim.

The excessive force claim against Ronnie Hitchcock in his individual capacity will be dismissed on summary judgment. Sheriff Hitchcock was not present when the officers, led by the federal marshals, initially stopped the plaintiffs. Sheriff Hitchcock was not in the group of officers who used their firearms to stop the plaintiffs' automobile. Sheriff Hitchcock did not remove Shawn and Michelle Graham from their automobile, lay them on the ground, or handcuff them Sheriff Hitchcock arrived on the scene after the plaintiffs had already been stopped, removed from the automobile, and handcuffed by the federal marshals.

The excessive force claim against Sequatchie County and Van Buren will be dismissed on summary judgment. Assuming *arguendo* that Chad Martin violated the plaintiffs' Fourth Amendment right with regard to the use of excessive force during the investigative stop, the excessive force claim against Van Buren County under 42 U.S.C. § 1983 must be dismissed. Van Buren County is not vicariously liable under § 1983 for constitutional torts committed by Martin based on the doctrine of *respondeat superior.* Van Buren County cannot be held liable for the actions and conduct of Chad Martin merely because he was employed as a deputy sheriff by Van Buren County.

There is no basis to hold Sequatchie County and Van Buren County liable under 42 U.S.C. § 1983. The excessive force claims against Sequatchie County and Van Buren County must be dismissed because the plaintiffs have no proof showing that on January 29, 2009, Sequatchie County and Van Buren County had a policy or custom that caused a violation of the plaintiffs' rights

protected under the Fourth Amendment. Plaintiffs cannot show that their Fourth Amendment right against unreasonable seizure (use of excessive force) was violated as a result of the execution of a governmental policy or custom adopted by Sequatchie County and Van Buren County. Plaintiffs have not presented any facts and proof to establish that Sequatchie County and Van Buren County had a policy or custom which encouraged, allowed, or tolerated the use of unreasonable, excessive force by their police officers during arrests or *Terry* investigative stops.

### 3. Claim of Supervisory Liability Against Sheriff Hitchcock

Plaintiffs seek to hold Sheriff Hitchcock individually liable under 42 U.S.C. § 1983 and the Fourth Amendment for the actions and conduct of the federal marshals and all county officers during the *Terry* investigative stop based on the theory of supervisory liability. It is alleged that the federal marshals and Van Buren County officers who made the investigative stop were acting under the command and supervision of Sheriff Hitchcock.

This claim must be dismissed . The proof establishes that Sheriff Hitchcock was not present when the officers made the initial investigative stop of the plaintiffs. Sheriff Hitchcock was not present when the officers, led by the federal marshals, displayed and aimed their firearms with mounted lights toward the plaintiffs seated inside their automobile.

Moreover, to the extent that any federal marshals and Van Buren County officers may have used excessive force in violation of the Fourth Amendment, Sheriff Hitchcock cannot be held individually liable on the theory supervisory liability. The federal marshals and the Van Buren County officers who participated in the investigative stop were not acting under the command and supervision of Sheriff Hitchcock. At most, Sheriff Hitchcock was only the supervisor of the deputy sheriffs from the Sequatchie County Sheriff's Department. Consequently, the excessive force claim

against Sheriff Hitchcock is entirely dependant upon the actions and conduct of only Sequatchie County deputy sheriffs. Plaintiffs have not made out a viable Fourth Amendment excessive force claims against any Sequatchie County deputy sheriffs. Sheriff Hitchcock cannot be liable based on a theory of supervisory liability where there is no proof that a Sequatchie County deputy sheriff used excessive force against the plaintiffs in violation of the Fourth Amendment.

Although supervisory officials may be held liable in certain situations for failure to adequately supervise or control individual police officers, supervisory liability may not be imposed pursuant to 42 U.S.C. § 1983 based on the doctrine of *respondeat superior*. Under § 1983 Sheriff Hitchcock's liability must be assessed individually based on his own actions. *Walters v. Stafford*, 317 Fed. Appx. 479, 486, 489 (6th Cir. 2009); *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982); *Smith v. City of Chattanooga,* 2009 WL 3762961, * 13 (E.D. Tenn. Nov. 4, 2009).

To make out a viable claim of supervisory liability, the plaintiffs must present proof showing that Sheriff Hitchcock encouraged a specific incident of the use of a excessive force, or that Sheriff Hitchcock in some way directly participated in it. At a minimum, the plaintiffs are required to prove that Sheriff Hitchcock implicitly authorized, approved or knowingly acquiesced in the use of excessive force. *Walters*, 317 Fed. Appx. at 489; *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 349 (6th Cir. 2007); *Taylor v. Michigan Department of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995); *Smith,* 2009 WL 3762961, at * 13. There is no supervisory liability under 42 U.S.C. § 1983 based on a supervisor's mere failure to act. *Walters*, 317 Fed. Appx. at 489; *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999); *Smith,* 2009 WL 3762961, at * 13. Plaintiffs must show that Sheriff Hitchcock did more than play a passive role in the alleged excessive force violation or tacitly approved of it. *Walters*, 317 Fed.

Appx. at 489; *Bass*, 167 F.3d at 1048; *Smith,* 2009 WL 3762961, at * 13.  Sheriff Hitchcock cannot be held liable based solely on his right to control and supervise the Sequatchie County deputy sheriffs or simple awareness of any excessive force used by the deputy sheriffs under his command. *Walters*, 317 Fed. Appx. at 489-90; *McQueen v. Beecher Community Schools*, 433 F.3d 460, 470 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (supervisor's knowledge of unconstitutional conduct and failure to act did not create supervisor liability); *Smith,* 2009 WL 3762961, at * 13.

The Court finds that the plaintiff have failed to make out a viable claim of supervisory liability against Sheriff Hitchcock under the Fourth Amendment and 42 U.S.C. § 1983 for the use of excessive force.  Plaintiffs have not presented any proof showing that Sheriff Hitchcock authorized or encouraged any Sequatchie County deputy sheriffs or any other officers to use excessive force when making the investigative stop.  Plaintiffs cannot prove that Sheriff Hitchcock implicitly authorized, approved, or knowingly acquiesced in the use of excessive force.

### 4.  Claims of Unreasonable Searches of Plaintiffs and Their Automobile

With one exception, the plaintiffs' Fourth Amendment claims of unreasonable searches during the investigative stop must be dismissed.  The search of the passenger compartment and trunk of the plaintiffs' automobile was reasonable and did not violate the Fourth Amendment.  Incident to the investigative stop, it was reasonable for the officers to quickly search the passenger compartment and trunk in an effort to find fugitive Johnson.

Incident to the valid *Terry* investigative stop, it was also reasonable for the officers to perform routine pat-down searches on the exterior clothing of Shawn and Michelle Graham to determine whether they were carrying weapons.  These pat-down searches did not violate the Fourth

Amendment. *Terry*, 392 U.S. at 23-24. A lawful investigative stop does not necessarily carry with it the authority for officers to conduct pat-down searches in all situations. Pat-down searches are permissible under the Fourth Amendment and *Terry* when officers have a reasonable suspicion that a person detained may be armed and dangerous. *United States v. Noble*, 364 Fed. Appx. 961, 964 (6th Cir. 2010); *United States v. Campbell*, 549 F.3d 364, 373 (6th Cir. 2008); *see also Arizona v. Johnson*, 129 S.Ct. 781 (2009). In the present case, this Court concludes that the officers had a reasonable suspicion that Shawn and Michelle Graham might be armed with weapons. It was reasonable for the officers to conduct the pat-down searches allowed by *Terry* to ensure the officers' safety. To the extent that the plaintiffs make Fourth Amendment claims based on the pat-down searches, the defendants are entitled to summary judgment and these claims will be dismissed.

There is one Fourth Amendment unreasonable search claim here that cannot be dismissed on summary judgment. Michelle Graham contends that while she was handcuffed, Sheriff Hitchcock performed a more intrusive search by reaching his hands into her pockets. Sheriff Hitchcock denies this allegation. There are genuine issues of material fact in dispute which preclude summary judgment on this claim.

If Sheriff Hitchcock used his hands to search inside Michelle Graham's pockets without reasonable suspicion that she was carrying a weapon, this would be unreasonable and exceed the scope of a frisk or pat-down search allowed by *Terry* under the Fourth Amendment *Sibron v. New York*, 392 U.S. 40, 65 (1968). The purpose of a limited pat-down search under *Terry* is not to discover evidence of a crime, but rather to allow police officers to pursue an investigation without fear of violence. *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993). The pat-down search must be limited to what is necessary for the discovery of any weapons. *Terry*, 392 U.S. at 26. If the

protective search goes beyond what is necessary to determine whether a suspect or detainee is carrying a weapon, it is no longer a reasonable search under *Terry* and violates the Fourth Amendment. *Dickerson*, 508 U.S. at 373. Michelle Graham may proceed to trial on this claim.

5. **Length of Time of Investigative Stop**

For a *Terry* investigative stop to be reasonable under the Fourth Amendment, it must be brief and minimally intrusive. It must be reasonably related in scope and duration to the purposes of the investigation and the circumstances which justified the stop in the first place. *Berkemer*, 468 U.S. at 439; *Terry*, 392 U.S. at 20; *Dorsey*, 517 F.3d at 398; *Bennett*, 410 F.3d at 836.

In this case the issue whether the length of time for the investigative stop (30 - 45 minutes) was unreasonable is for the jury at trial. There are genuine issues of material fact in dispute which preclude summary judgment. Viewing the facts in the light most favorable to the plaintiffs, a reasonable jury at trial could find that the length of time of the investigative stop was unreasonable and violated the Fourth Amendment. The purpose of the investigative stop was to allow the officers to quickly search for fugitive Johnson. Plaintiffs can plausibly claim that once the officers searched the automobile and did not find fugitive Johnson, then the investigative stop should have brought to a swift conclusion and the plaintiffs should have been released to go on their way.

Plaintiffs may proceed to trial on this Fourth Amendment claim against Chad Martin and Sheriff Hitchcock in their individual capacities, and against Sequatchie County. Sequatchie County may be liable under 42 U.S.C. § 1983 because Sheriff Hitchcock is a policymaker for the Sequatchie County Sheriff's Department.

Plaintiffs cannot maintain this claim against Van Buren County. There is no basis to hold Van Buren County liable under 42 U.S.C. § 1983. Plaintiffs have no proof showing that on January

29, 2009, Van Buren County had a policy or custom that caused a violation of the plaintiffs' rights protected under the Fourth Amendment.

F.     **Fourth Amendment Claim of Unreasonable Seizure: *De Facto* Arrest Without Probable Cause and Detention in Jail**

Shawn and Michelle Graham claim that they were arrested without probable cause and detained as prisoners in the Sequatchie County jail for four hours in violation of the Fourth Amendment.  Plaintiffs may proceed to trial on this Fourth Amendment claim but only against Sequatchie County along with Sheriff Hitchcock, Brandon Austin, and Stacy White in their individual capacities.  The federal marshals and Sheriff Hitchcock made the decision to detain the plaintiffs in the Sequatchie County jail.  Van Buren County and Chad Martin are not responsible for the plaintiffs being arrested after the *Terry* investigative stop.  Van Buren County and Chad Martin played no role in the plaintiffs being transported and detained in jail.

Sheriff Hitchcock, Brandon Austin, and Stacy White in their individual capacities are not entitled to qualified immunity.  Viewing the facts in the light most favorable to the plaintiffs, they have made out a viable Fourth Amendment unreasonable seizure claim that survives summary judgment.  Plaintiffs can plausibly show that at the conclusion of the *Terry* investigative stop, they were arrested *de facto* without probable cause.  They were involuntarily transported in handcuffs and detained in the Sequatchie County jail for four hours based on nothing more than a reasonable suspicion that they might know something about the location of fugitive Johnson or might be trying to assist fugitive Johnson to escape.  The four-hour detention of Shawn and Michelle Graham in the Sequatchie County jail was not objectively reasonable and violated a right under the Fourth Amendment that was clearly established on January 29, 2009.  *Hayes v. Florida*, 470 U.S. 811

(1985); *Dunaway v. New York*, 442 U.S. 200 (1979); *United States v. Butler*, 223 F.3d 368 (6th Cir. 2008). *Centanni v. Eight Unknown Officers*, 15 F.3d 587 (6th Cir. 1994); *see also United States v. Smith*, 549 F.3d 355, 360 (6th Cir. 2008);*United States v. Shaw*, 464 F.3d 615 (6th Cir. 2006).

In *Dunaway*, 442 U.S. 200 the police, without probable cause to arrest, seized Mr. Dunaway at a neighbor's home and transported him to a police station for questioning. After obtaining incriminating statements, the police arrested him. The Supreme Court rejected the argument that the initial seizure and detention of Dunaway did not amount to an arrest under the Fourth Amendment because the police had a reasonable suspicion that he possessed "intimate knowledge about a serious and unsolved crime." *Dunaway*, 442 U.S. at 207. The Supreme Court held that the police violated the Fourth Amendment when they seized Dunaway without probable cause and transported him to the police station for interrogation. *Id*. at 216.

In *Centanni*, 15 F.3d 587, the Sixth Circuit followed and applied *Dunaway* to a fact situation closely analogous to the instant case. *Centanni* is especially instructive here. In *Centanni*, the victim of a shooting incident made a complaint to the police that he had been shot by Nicholas Lombardo. Police officers were dispatched to stake out the Lombardo residence until an arrest warrant could be obtained. Prior to the shooting, Marilyn Centanni was at the Lombardo residence visiting her boyfriend, the son of Lombardo. Centanni was not involved in and had no knowledge about the shooting. Centanni exited the Lombardo residence at 12:25 a.m. and started to drive away in her car. Upon observing this unknown person (Centanni) leave the Lombardo residence, police officers stopped Centanni's car to investigate. It was a valid *Terry* investigative stop. Centanni consented to a search of her person, purse, and car but the officers found nothing incriminating. At this point the investigative stop should have ended and Centanni should have been allowed to go on

her way.  There was no probable cause to arrest her.

However, the detention of Centanni was prolonged for several more hours which exceeded the scope and duration of a brief *Terry* investigative stop.  The police officers informed Centanni about the Lombardo shooting incident.  Despite having no incriminating evidence linking her to the crime under investigation, the officers told Centanni that she had to accompany them to the police station for further questioning.  The officers made it clear that she was not free to leave.  Centanni was placed under *de facto* arrest.  Centanni drove her car to the police station escorted by two police cars.  At the police station, officers took Centanni to an interview room in the jail area.  Even though she was not charged with a criminal offense, she was read her *Miranda* rights and waived them.  The officers questioned Centanni for 30 minutes.  Concerned that Centanni might contact Lombardo if she were released, the officers detained Centanni at the police station until Lombardo was arrested.  Centanni was given a choice of staying in either a jail cell or the visitor's part of the prisoner's visiting room.  She chose the visiting room.  Lombardo was later arrested at 4:00 a.m. that same night.  Centanni was released from jail at 4:20 a.m. after being detained for a total of four hours.

Centanni filed a federal civil rights suit under 42 U.S.C. § 1983 claiming violations of her rights under the Fourth and Fourteenth Amendments resulting from the investigative stop, search, and detention in jail.  The officers raised the defense of qualified immunity.  The district court held that, while the initial *Terry* investigative stop and the search of Centanni were constitutionally permissible, the removal of Centanni to the police  station for further questioning and her continued detention amounted to a *de facto* arrest without probable cause in violation of the Fourth Amendment.  The district court determined that the officers were not entitled to qualified immunity because their unreasonable actions violated clearly established law.

The officers appealed on the issue of qualified immunity and the Sixth Circuit affirmed the district court's decision. On appeal the officers argued that they were entitled to qualified immunity because Centanni was never formally arrested, and it was reasonable to detain Centanni for four hours due to exigent circumstances, i.e. the ongoing search for shooting suspect Lombardo. The officers argued that the "limited invasion" of Centanni's personal liberty was reasonable due to the possibility that Centanni might alert Lombardo of his impending arrest, which could have triggered a hostage situation or armed encounter with police officers. The Sixth Circuit rejected these arguments and determined that the four-hour detention of Centanni was a *de facto* arrest without probable cause which violated the Fourth Amendment and was unreasonable since it was contrary to clearly established law. *Centanni*, 15 F.3d at 589-92. The Sixth Circuit relied on *Hayes*, 470 U.S. 811, and *Dunaway*, 442 U.S. 200. The officers were denied qualified immunity.

The Sixth Circuit said it is "clear that the line between an investigatory detention and an arrest is crossed 'when the police, without probable cause or a warrant, forcibly remove a person from his home or other place in which he entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes.'" *Centanni*, 15 F.3d at 590 (quoting *Hayes*, 470 U.S. at 816). The Sixth Circuit concluded it was clearly established law that – regardless of any exigent circumstances – the seizure and transportation to a police station of an individual who is not suspected of any criminal activity constitutes a *de facto* arrest requiring probable cause to arrest under the Fourth Amendment. "Surely, any reasonable official would understand that a warrantless intrusion of this degree has simply never been tolerated by this court or any other." *Centanni*, 15 F.3d at 592.

In light of the clearly established law in *Hayes* 470 U.S. 811; *Dunaway*, 442 U.S. 200; and

*Centanni*, 15 F.3d 587, the motion by Sequatchie County, Sheriff Hitchcock, Brandon Austin, and Stacy White for summary judgment to dismiss this claim must be denied. The federal marshals and Sheriff Hitchcock may have believed there were exigent circumstances which justified detaining Shawn and Michelle Graham in jail while the officers searched for and captured fugitive Johnson. But *Centanni* teaches us that, regardless of such exigent circumstances, it is a violation of the Fourth Amendment to make a *de facto* arrest of Shawn and Michelle Graham without probable cause and detain them in the Sequatchie County jail for four hours. Such a prolonged detention in jail for four hours far exceeds the proper limits of a brief *Terry* investigative stop.

### G.  Fourth Amendment Claim of Unreasonable Visual Strip Searches

Shawn and Michelle Graham claim that their strip searches in the Sequatchie County jail violated their Fourth Amendment right to be secure against unreasonable searches. The strip search claims are brought against Sequatchie County and Sheriff Hitchcock, Brandon Austin, and Stacy White in their individual capacities.

These defendants raise two arguments. First, they argue that the strip searches did not violate the Fourth Amendment. Defendants assert that the Ninth Circuit upheld the constitutionality of a policy of mandatory strip searches for all arrested persons who were to be introduced into the jail's general inmate population. *Bull v. City and County of San Francisco*, 595 F.3d 964 (9th Cir. 2010). The Eleventh Circuit held that a policy of visually strip searching all new arrestees as part of the process of booking and admitting them into the general prisoner population of a detention facility, even without reasonable suspicion to believe that they may be concealing weapons or contraband, is permissible under the Fourth Amendment so long as the strip searches are not performed in an abusive manner. *Powell v. Barrett*, 541 F.3d 1298 (11th Cir. 2008) (en banc);

*accord Florence v. Board of Chosen Freeholders of County of Burlington*, 612 F.3d 296 (3rd Cir. 2010).

The problem with the defendants' argument is that the present case is distinguishable on the facts from *Bull* and *Powell*. At no time were Shawn and Michelle Graham placed into the general inmate population in the Sequatchie County jail. They were not "booked" into the jail because they were not charged with committing criminal offenses. Instead, Shawn and Michelle Graham were detained in locked holding cells and segregated from other jail prisoners. There is no proof that they were ever in a position to mingle or have physical contact with other prisoners inside the jail.

Next, defendants Hitchcock, Austin, and White in their individual capacities argue that they are entitled to qualified immunity. They contend that on January 29, 2009, competent law enforcement officers could have reasonably disagreed whether the strip searches of Shawn and Michelle Graham would violate the Fourth Amendment. Defendants rely on the deposition of Van Buren County Deputy Sheriff Chad Martin. Chad Martin was asked whether he thought that it was correct police practice for deputies at the Sequatchie County jail to require Shawn and Michelle Graham to submit to a visual strip-search when they had been arrested and detained ,but not charged, with any criminal offenses. Chad Martin gave the following answer:

> If I was the sheriff and they were coming into my facility and they were
> going to be locked in a cell in the back, absolutely, they would be searched
> because if not - - you know, I mean, I have been to training where there's
> people that actually carried full-sized firearms and blowed their own
> brains out inside a facility. So, I mean, if it - - anybody coming in would
> have been searched if they were going to be detained in the back. Here,
> most of the time, we kept them out front; therefore, we didn't strip search
> them. But if they were going in the back, they should be.

[Court Doc. No. 34-2, p. 8, Chad Martin's Deposition p. 28]. Martin opines that it was correct police procedure to strip search Shawn and Michelle Graham when they arrived at the jail if they

were going to be detained in cells.

In response, the plaintiffs emphasize that Sheriff Hitchcock and the Sequatchie County Sheriff's Department have not produced any policy governing strip searches in the Sequatchie County jail that was in effect on January 29, 2009. Plaintiffs argue that whatever policy or custom the Sequatchie County Sheriff's Department utilized when performing the visual strip searches on Shawn and Michelle Graham did not comply with Tennessee law. Plaintiffs assert that Tennessee law forbids jailers from strip searching persons who are confined in a holding cell and kept isolated from the general jail population because they have not been charged with crimes. [Court Doc. No. 40, p. 5]. Plaintiffs cite Tenn. Code Ann. § 40-7-119 which provides:

> (a) As used in this section, "strip search" means having an arrested person remove or arrange some or all of the person's clothing so as to permit a visual inspection of the genitals, buttocks, anus, female breasts or undergarments of the arrested person.
>
> (b) No person arrested for a traffic, regulatory or misdemeanor offense, except in cases involving weapons or a controlled substance, shall be strip searched unless there is a reasonable belief that the individual is concealing a weapon, a controlled substance or other contraband.

Plaintiffs contend that their strip searches were unreasonable and unnecessary. Before the plaintiffs arrived at the jail, they were searched by officers at the scene of the investigative stop. Plaintiffs assert that it was unreasonable to believe they might be concealing weapons, controlled substances, or other contraband when they arrived at the jail.

Plaintiffs overlook TCI Rule 1400-1-.07(1) which provides: "Each newly admitted prisoner shall be thoroughly searched for weapons and other contraband immediately upon arrival in the facility, regardless of whether the arresting officer has previously conducted a search." Moreover, the plaintiffs overreach when they argue that Tennessee law prohibits jailers from strip searching

persons who are confined in a holding cell and kept isolated from the general jail population because they have not been charged with crimes. Plaintiffs do not cite any Tennessee statutes or reported case law from the Tennessee state courts directly on point to support this argument. Tenn. Code Ann. § 40-7-119 does not expressly provide this.

The plaintiffs' Fourth Amendment strip search claims brought under 42 U.S.C. § 1983 do not turn on the question whether the defendants violated Tennessee state law. 42 U.S.C. § 1983 provides a cause of action and remedy for the deprivation or violation of federal civil rights. To prevail on their federal strip search claims under 42 U.S.C. § 1983, the plaintiffs must be able to prove a deprivation or violation of their Fourth Amendment right not to be subjected to unreasonable searches. But when determining whether a strip search is justified and reasonable under the Fourth Amendment, this Court may examine and consider Tennessee's jail policies on when strip searches are appropriate. *See e.g. United States v. Warfield*, 2011 WL 9178, * 3 (6th Cir. Jan. 3, 2011); *Dobrowolskyj v. Jefferson County, Kentucky*, 823 F.2d 955 (6th Cir. 1987). Tenn. Code Ann. § 40-7-119(b) provides that a person arrested for a traffic, regulatory or misdemeanor offense, except in cases involving weapons or a controlled substance, shall not be strip searched unless there is a reasonable belief that the individual is concealing a weapon, a controlled substance or other contraband. This Tennessee standard is consistent with Fourth Amendment strip search cases decided by the United States Supreme Court and the Sixth Circuit Court of Appeals.

In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court upheld a policy of conducting routine visual body cavity searches of individuals housed at a metropolitan correctional center. The facility housed convicted inmates, pretrial detainees, witnesses in protective custody, and persons incarcerated for contempt of court. *Id*. at 524. *Bell* held that a policy of requiring all detainees to

undergo a visual body cavity inspection as part of a strip search after every contact visit with a person from outside the facility was reasonable and did not violate the Fourth Amendment. The Supreme Court said that corrections officials are entitled to "wide-ranging deference" in the adoption and execution of policies and practices that in their judgment are necessary to preserve internal order, discipline, and security. *Id.* at 547-48. The test of reasonableness under the Fourth Amendment requires a balancing of the need for the strip search against the invasion of personal rights. Courts must consider the scope of the intrusion, the manner in which the search is conducted, the justification for initiating the search, and the place in which it is conducted. *Id.* at 559.

In the wake of *Bell*, the Sixth Circuit has developed a line of caselaw dealing with the question of when strip searches are reasonable and justified under the Fourth Amendment based on the application of the *Bell* balancing test. *Jackson v. Herrington*, 393 Fed. Appx. 348 (6th Cir. 2010); *Masters v. Crouch*, 872 F.2d 1248 (6th Cir. 1989); *Dobrowolskyj*, 823 F.2d 955; *Dufrin v. Spreen*, 712 F.2d 1084 (6th Cir. 1983). These Sixth Circuit cases stand for the following general principles.

*Bell* does not validate a blanket policy of strip searching all arrestees and pretrial detainees when they are admitted or processed into a jail or detention facility. As of 1989, it was clearly established law in the Sixth Circuit that it is unreasonable under the Fourth Amendment to strip search a person arrested for a traffic violation or minor, nonviolent offense not associated with weapons or drugs, unless there are other specific facts and circumstances to support a reasonable belief that the person will carry weapons or contraband into the jail. The single fact that a person arrested for a traffic violation or minor, nonviolent offense may come into contact with other prisoners inside the jail is, standing alone, insufficient to justify a strip search. *Masters*, 872 F.2d

1284.  On the other hand, if a person is under arrest for a felony offense or a misdemeanor offense involving violence or drugs, it is reasonable to require such a person to submit to a strip search when being admitted into a jail or detention center, especially if that person is going to be placed into the jail's general prisoner population.  *Dobrowolskyj*, 823 F.2d 955; *Dufrin*,712 F.2d 1084.

The meager facts in the present record are insufficient for this Court to make a determination prior to trial whether the visual strip searches were unreasonable and violated the Fourth Amendment.  Shawn and Michelle Graham were under *de facto* arrest without probable cause in violation of the Fourth Amendment, and they were not charged with committing any criminal offenses.  They were detained alone in locked holding cells and were not placed in the jail's general inmate population.  It appears that Shawn and Michelle Graham did not have any contact with other prisoners in the jail.  These facts weigh in favor of finding that the strip searches were unreasonable and violated the Fourth Amendment.

On the other hand, Shawn and Michelle Graham were being detained at the request of federal marshals in connection with the manhunt for fugitive Johnson who was considered armed and dangerous.  Shawn Graham had a prior methamphetamine conviction. This weighs in favor of throughly searching Shawn and Michelle Graham when they were admitted into the jail.

In the absence of more facts and proof, the Court is unable to determine whether it was reasonable to believe that Shawn and Michelle Graham might be carrying weapons, controlled substances, or other contraband, and should be strip searched before being admitted into the jail. The record does not establish the specific factors that Brandon Austin and Stacy White took into consideration when they decided to perform the strip searches.  One significant problem is that the record does not show what policy or custom, if any, that the Sequatchie County Sheriff's

Department had on January 29, 2009, concerning visual strip searches of newly admitted prisoners who were placed in holding cells. Although Sheriff Hitchcock says that his conduct and the actions of his deputies where consistent with the policies and procedures of the Sequatchie County Sheriff's Department, he has not provided the specific details of those policies to this Court. The facts concerning the strip searches need to be more fully developed at trial.

Viewing the facts in the light most favorable to the plaintiffs, the strip searches in this case fall under the Sixth Circuit's opinion in *Masters*, 872 F.2d 1284. Summary judgment cannot be granted in favor of Sequatchie County, Sheriff Hitchcock, Brandon Austin, and Stacy White. Based on the clearly established law as expressed in *Masters*, 872 F.2d 1284, this Court cannot say that Sheriff Hitchcock, Brandon Austin, and Stacy White in their individual capacities are entitled to qualified immunity. *See also Archuletta v. Wagner*, 523 F.3d 1278 (10th Cir. 2008).

## VI.    42 U.S.C. § 1988

Plaintiffs seek to recover their attorney fees and costs pursuant to 42 U.S.C. § 1988(b) which is permissible if they ultimately prevail on a claim under 42 U.S.C. § 1983. However, the plaintiffs go one step further in their complaint by also citing 42 U.S.C. § 1988 when pleading their substantive federal claims and causes of action. Plaintiffs mistakenly rely on 42 U.S.C. § 1988 as a source that creates and provides for substantive causes of action for the alleged violation of their civil rights. This the plaintiffs cannot do.

42 U.S.C. § 1988 does not create or provide for any substantive causes of action for a violation of civil rights under either federal law or Tennessee state law. 42 U.S.C. § 1988 cannot be used to create a federal cause of action where 42 U.S.C. § 1983 does not otherwise provide one. *Monell,* 436 U.S. at 701 n. 66; *Moor v. County of Alameda,* 411 U.S. 693, 703-04 (1973) (42 U.S.C.

§ 1988 does not authorize the wholesale importation into federal law of state law causes of action); *Williams,* 258 Fed. Appx. at 823; *Wilson*, 477 F.3d at 332; *Hall v. Wooten*, 506 F.2d 564, 568 (6th Cir. 1974); *Fowler*, 2010 WL 723799, 97030, at * 11; *Henderson*, 2005 WL 1397030, at * 6.

42 U.S.C. § 1988 only speaks to suitable remedies available to a prevailing party based on an already valid 42 U.S.C. § 1983 claim. In the absence of a valid § 1983 claim, § 1988 is irrelevant. Before the plaintiffs can recover damages or any other relief pursuant to 42 U.S.C. § 1988, including attorney fees, the plaintiffs must first prevail on a 42 U.S.C. § 1983 claim against one or more of the defendants. The remedy provisions in § 1988 do not become relevant until after the plaintiffs prevail on a § 1983 claim. *Robertson v. Wegman*, 436 U.S. 584, 588 (1978); *Henderson*, 192 Fed. Appx. at 397; *Williams v. Leatherwood*, 2006 WL 2405017, * 3 (E.D. Tenn. Aug. 16, 2006), *aff'd*, 258 Fed. Appx. 817 (6th Cir. 2007).

To the extent that the plaintiffs plead and seek to bring substantive claims and causes of action pursuant to 42 U.S.C. § 1988 for the alleged violation of their civil rights under federal law and/or Tennessee law, all such § 1988 substantive causes of action must be dismissed.

## VII.  Tennessee State Law Claims

Pursuant to 28 U.S.C. § 1367 this Court has supplemental jurisdiction over related Tennessee state law claims. As the Court reads Count I of the complaint, the plaintiffs do not plead any state law claims against Ronnie Hitchcock, Brandon Austin, Stacy White, and Chad Martin in their individual capacities. All of the plaintiffs' claims against these individual officers are based solely on federal civil rights law. The Court focuses its attention on the state law claims against Sequatchie County and Van Buren County.

### A.  Claims Under Tennessee Constitution

Plaintiffs claim that Sequatchie County and Van Buren County are liable "under those provisions in the Articles of the Tennessee State Constitution that correspond to the United States Constitution." Plaintiffs do not specify any particular sections or clauses of the Tennessee Constitution which they contend are applicable.

All claims predicated on the alleged deprivation or violation of the plaintiffs' rights protected under the Tennessee Constitution must be dismissed. The State of Tennessee does not recognize an implied private cause of action for violations of the Tennessee Constitution. *Williams,* 258 Fed. Appx. at 824; *Cline v. Rogers*, 87 F.3d 176, 180 (6th Cir. 1996); *Mata-Cuellar v. Tennessee Dept. of Safety*, 2010 WL 3122635, * 2 (M.D. Tenn. Aug. 6, 2010); *Overton v. Hamilton County, Tennessee*, 2009 WL 2601848, * 4 (E.D. Tenn. Aug. 24, 2009); *Arbuckle*, 696 F. Supp.2d at 931-32; *Fowler,* 2010 WL 723799, at * 12; *Parker v. Henderson County, Tennessee*, 450 F. Supp.2d 842, 856 (W.D. Tenn. 2006); *Williams v. Leatherwood*, 2006 WL 1788012, * 5 (E.D. Tenn. June 26, 2006); *Alexander v. Beale Street Blues Co., Inc*., 108 F. Supp.2d 934, 945 (W.D. Tenn. 1999); *Bowden Building Corp. v. Tennessee Real Estate Commission*, 15 S.W.3d 434, 444-45 (Tenn. Ct. App. 1999); *Lee v. Ladd*, 834 S.W.2d 323, 325 (Tenn. Ct. App. 1992) (no authority for recovery of damages for violation of Tennessee Constitution by state officer).

## B. Negligence Claims and Immunity From Suit Under TGTLA

Plaintiffs claim that Sequatchie County and Sheriff Hitchcock were negligent by failing to train and educate defendants Stacy White and Brandon Austin in the proper manner of detention and search of prisoners in the jail. Plaintiffs contend that Sequatchie County is liable for negligence under the TGTLA, especially with regard to Sheriff Hitchcock's failure to properly train and educate Stacy White and Brandon Austin concerning the "manner of respecting the privacy of those

detained, but not charged with a crime." This negligence claim concerns the strip searches of Shawn and Michelle Graham in the Sequatchie County jail.

Plaintiffs further claim that Van Buren County was negligent by failing to properly train and educate its officers in the constitutional manner of arrest and detention. The negligence claim against Van Buren County only concerns the events that occurred incident to the *Terry* investigative stop. Van Buren County and its officers were not involved in and cannot be held liable for the *de facto* arrest, detention, and strip searches of Shawn and Michelle Graham in the Sequatchie County jail which occurred after the *Terry* investigative stop.

The Court concludes that all negligence claims against Sequatchie County and Van Buren County must be dismissed on summary judgment on the ground that they have immunity from suit under TGTLA. The doctrine of sovereign immunity, long acknowledged in Tennessee common law, provides that a civil suit may not be brought against a governmental entity unless it consents to be sued. *Rhodes*, 2005 WL 2647921, at * 8; *Hale*, 2004 WL 1854179, at * 15; *Doyle v. Frost*, 49 S.W.3d 853, 857 (Tenn. 2001); *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997). The liability of Sequatchie County and Van Buren County for torts committed by their respective officers and employees is governed by the TGTLA, Tenn. Code Ann. §§ 29-20-101 - 29-20-407. TGTLA codifies the Tennessee common law rule of sovereign immunity for governmental entities. Tenn. Code Ann. §§ 29-20-102(3) and 29-20-201; *Johnson v. City of Memphis*, 2010 WL 3305264, * 6 (6th Cir. Aug. 24, 2010); *Rhodes*, 2005 WL 2647921, at * 8; *see also Limbaugh v. Coffee Medical Center*, 59 S.W.3d 73, 79 (Tenn. 2001). TGTLA affirms that governmental entities in Tennessee are immune from suit with certain narrow exceptions and waivers of immunity set forth in TGTLA. The limited waiver of sovereign immunity in TGTLA is in derogation of Tennessee

common law and must be strictly construed by the courts. *Rhodes*, 2005 WL 2647921, at * 8; *Hale*, 2004 WL 1854179, at * 15; *Limbaugh*, 59 S.W.3d at 83-84; *Doyle*, 49 S.W.3d at 858; *Ezell v. Cockrell*, 902 S.W.2d 394, 399 (Tenn. 1995).

Sequatchie County and Van Buren County are generally subject to suit under TGTLA for civil tort claims sounding in negligence, unless the negligence claims arise out of one of the exceptions enumerated in Tenn. Code Ann. § 29-20-205. *Rhodes*, 2005 WL 2647921, at * 8; *Hale*, 2004 WL 1854179, at * 15; *Sallee v. Barrett*, 171 S.W.3d 822, 826 (Tenn. 2005); *Limbaugh*, 59 S.W.3d at 79; *Doyle*, 49 S.W.3d at 858. Tenn. Code Ann. § 29-20-205(2) provides that immunity from suit is removed or waived for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of "false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, *or civil rights*." (Emphasis supplied).

Sequatchie County and Van Buren County have immunity from suit under TGTLA on all of the plaintiffs' negligence claims. The negligence claims "arise out of" alleged violations of the plaintiffs' civil rights. The civil rights exception in Tenn. Code Ann. § 29-20-205(2) is applicable here. *Rhodes*, 2005 WL 2647921, at * 8; *Hale*, 2004 WL 1854179, at ** 15-17. Sequatchie County and Van Buren County also have immunity from suit under TGTLA to the extent that the plaintiffs' negligence claims arise out of alleged false arrest, infliction of mental anguish, and invasion of right of privacy. Tenn. Code Ann. § 29-20-205(2). Furthermore, there is no proof showing that Van Buren County was negligent in training its law enforcement officers including Chad Martin.

C.     **TGTLA and Assault Claims**

The assault claims against Sequatchie County and Van Buren County must also be dismissed because they have immunity from suit under TGTLA. Assault is an intentional tort that does not sound in negligence.

The tort of assault is not explicitly listed in Tenn. Code Ann. § 29-20-205(2) as an exception to the TGTLA waiver of immunity for governmental entities with regard to claims sounding in negligence. Sequatchie County and Van Buren County cannot be held liable for negligence under TGTLA based merely on the alleged commission of an intentional assault by their police officers. Sequatchie County and Van Buren Count can be held liable for assault under TGTLA only where the plaintiffs can prove that a negligent act or omission by the counties proximately caused injury to the plaintiffs. For the plaintiffs to prevail on their claims seeking to hold Sequatchie County and Van Buren County liable for an assault committed by county officers, the plaintiffs are required to prove that an independent act of negligence by the counties proximately caused an intentional assault that resulted in the plaintiffs' suffering an injury. *Wilkerson v. City of Chattanooga*, 2010 WL 2735689, * 13 (E.D. Tenn. July 12, 2010); *Keys v. City of Chattanooga*, 2009 WL 2244615, * 3 (E.D. Tenn. July 27, 2009); *Rhodes*, 2005 WL 2647921, at * 9; *Hale*, 2004 WL 1854179, at * 16; *Baines v. Wilson County*, 86 S.S.3d 575, 580-81 (Tenn. Ct. App. 2002). This the plaintiffs have failed to do. Plaintiffs have not presented any proof showing that Sequatchie County and Van Buren County committed an independent negligent act or omission that proximately caused an officer employed by that county to commit an intentional assault against the plaintiffs.

There is an additional reason why the assault claims against Sequatchie County and Van Buren County shall be dismissed. The assault is alleged to have been committed in the context of a violation of the plaintiffs' civil rights. This is fundamentally a civil rights suit. The state law

negligence claims arise out of and are directly related to the plaintiffs' federal civil rights claims. Tenn. Code Ann. § 29-20-205(2) provides that Sequatchie County and Van Buren County have immunity from suit on negligence claims if the injury arises out of "civil rights."  Because the civil rights exception in Tenn. Code Ann. § 29-20-205(2) is applicable here,  Sequatchie County and Van Buren County have immunity from suit under TGTLA on the assault claims.  *Johnson*, 2010 WL 3305264, at ** 6-7; *Wilkerson*, 2010 WL 2735689, at * 14; *Overton*, 2009 WL 2601848, at * 4; *Rhodes*, 2005 WL 2647921, at * 9; *Hale*, 2004 WL 1854179, at * 17.

**VIII.** **Claims for Punitive Damages Against County Governments**

The demands for punitive damages against Sequatchie County and Van Buren County must be dismissed.  Plaintiffs are not entitled to bring a claim for punitive damages against Sequatchie County and Van Buren County pursuant to 42 U.S.C. § 1983.  *Jefferson v. City of Tarrant, Alabama*, 522 U.S. 75, 79 (1997); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Center for Bio-Ethical Reform,* 477 F.3d at 818-19; *Smith,* 2009 WL 3762961, at * 12; *Rhodes*, 2005 WL 2647921, at * 9; *Hale*, 2004 WL 1854179, at *18.

Moreover, the plaintiffs cannot bring a claim for punitive damages against Sequatchie County and Van Buren County under Tennessee law and TGTLA.  *Massey v. Hess,* 2007 WL 2725890, * 17 (E.D. Tenn. Sept. 17, 2007); *Bettis v. Pearson,* 2007 WL 2426404, ** 14-15 (E.D. Tenn. Aug. 21, 2007); *Rhodes*, 2005 WL 2647921, at * 9; *Hale*, 2004 WL 1854179, at * 18; *Tipton County Board of Education v. Dennis*, 561 S.W.2d 148, 152 (Tenn. 1978); *Parker v. Henderson County, Tennessee,* 2010 WL 377044, * 4 (Tenn. Ct. App. Feb. 4, 2010); *Johnson v. Smith*, 621 S.W. 2d 570, 572 (Tenn. Ct. App. 1981).

**IX.** **Conclusion**

The motion for summary judgment by defendants Van Buren County, Mark Evans, and Donnie Evans [Doc. No. 31] is **GRANTED**. All of the plaintiffs' claims and causes of action brought against Van Buren County, and against Mark Evans and Donnie Evans in their individual and official capacities, are **DISMISSED WITH PREJUDICE**.

The motion for summary judgment by defendant Willie Brewer [Doc. No. 33] is **GRANTED**. All of the plaintiffs' claims and causes of action brought against Willie Brewer in his individual and official capacities are **DISMISSED WITH PREJUDICE**.

The motion for summary judgment by defendant Chad Martin in his individual capacity [Doc. No. 31] is **GRANTED IN PART and DENIED IN PART**. The motion by Chad Martin for summary judgment is **DENIED** with respect to the following claims brought by the plaintiffs under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983: (1) claim of excessive force during the investigative stop; and (2) claim of unreasonable seizure concerning the length of time of the *Terry* investigative stop. Plaintiffs may proceed to trial against Chad Martin in his individual capacity on these two specified claims and causes of action. All of the plaintiffs' other claims and causes of action against Chad Martin in his individual and official capacities are **DISMISSED WITH PREJUDICE**.

The motion for summary judgment by defendants Brandon Austin and Stacy White in their individual capacities [Doc. No. 33] is **DENIED**. Plaintiffs Shawn and Michelle Graham may proceed to trial on the following claims against Brandon Austin and Stacy White in their individual capacities under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983: (1) claim of unreasonable seizure and detention in the Sequatchie County jail after the *Terry* investigative stop; and (2) claim of unreasonable strip searches in the Sequatchie County jail.

The motions for summary judgment by defendants Sequatchie County and Ronnie Hitchcock in his individual capacity [Doc. No. 33] are **GRANTED IN PART and DENIED IN PART**. This motion for summary judgment is **DENIED** with respect to the following claims brought by the plaintiffs under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983: (1) claim by Michelle Graham that Ronnie Hitchcock subjected her to an unreasonable search during the *Terry* investigative stop when Ronnie Hitchcock is alleged to have placed his hands into Michelle Graham's pockets; (2) claim of unreasonable seizure concerning the length of time of the *Terry* investigative stop; (3) claim of unreasonable seizure and detention of the plaintiffs in the Sequatchie County jail after the *Terry* investigative stop; and (4) claim of unreasonable strip searches in the Sequatchie County jail. Plaintiffs may proceed to trial against Sequatchie County and Ronnie Hitchcock in his individual capacity on these specified claims and causes of action. All of the plaintiffs' other claims and causes of action against Sequatchie County, and against Ronnie Hitchcock in his individual and official capacities, are **DISMISSED WITH PREJUDICE**.

The Court reserves entry of a final judgment until all of the plaintiffs' remaining claims have been adjudicated.

SO ORDERED.

ENTERED this 4th day of April, 2011.


          */s/ R. Allan Edgar*
        R. ALLAN EDGAR
      UNITED STATES DISTRICT JUDGE